ALMA A. NEATEROUR, Plaintiff-Appellant, v. WILLIAM HOLT *et al.*,
Defendants-Appellees (Blessing Hospital, Defendant).

Fourth District   No. 4—89—0067

Opinion filed September 28, 1989.—Rehearing denied October 26, 1989.

742

Leahy Law Offices, of Springfield (Cheryl Redfield Jansen and Mary Lee Leahy, of counsel), for appellant.

Keefe, Gorman & Brennan, of Quincy (Jerry L. Brennan, of counsel), for appellees.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff Alma Neaterour appeals a summary judgment order entered for defendant, Dr. William Holt, pursuant to section 2—1005 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005). The trial court found plaintiff's action was barred by the statute of limitations as set forth in section 13—212 of the Code of Civil Proce-

dure (Ill. Rev. Stat. 1987, ch. 110, par. 13—212). Plaintiff contends issues of fact remain disputed; therefore, summary judgment was improper. Alternatively, plaintiff argues her action is timely under the continuous treatment doctrine, and defendant should be estopped from raising the statute of limitations as a defense in this action. We affirm.

This appeal concerns only summary judgment entered for defendant William Holt. On April 8, 1981, plaintiff's left leg gave out from under her and she was unable to walk without assistance. Plaintiff went to Blessing Hospital and was told that her hip was broken. On that day, plaintiff became a patient of the defendant, an orthopedic surgeon. On April 9, 1981, defendant performed surgery on plaintiff's left hip, nailing it together with a sliding compression screw. Prior to surgery, plaintiff asked defendant to put in a total new hip and not a pin because she had heard that the pin would have to be eventually replaced. After surgery and while still in the hospital, plaintiff stated in her deposition defendant told her that the surgery did not go as planned and that the ball of her hip was drilled off-center.

Plaintiff continued under defendant's care and treatment after her surgery and visited defendant monthly at Quincy Clinic from May 20, 1981, through May 10, 1982. At the first visit on May 20, 1981, plaintiff told defendant she was in a lot of pain. On June 30, 1981, defendant told plaintiff that her hip was well healed and it looked good. On August 12, 1981, plaintiff mentioned to defendant the possibility of seeing another doctor in order to find out the cause of her constant pain. Defendant got very angry and, according to the plaintiff, told plaintiff to trust him and have faith in him.

On October 12, 1981, defendant told plaintiff he wanted her to see his associate, Dr. Gilchrist. Prior to the appointment with Dr. Gilchrist, plaintiff went to the University of Missouri Medical School and saw doctors Harper and Burchard. Harper told plaintiff that the ball of her left hip was dying and that it would never heal. Harper told plaintiff that the surgery would have to be done over and she needed a total hip replacement. As to her appointment with Dr. Gilchrist, October 15, 1981, plaintiff stated Gilchrist looked at the X rays defendant had taken but did not tell her anything. Sometime between October 26, 1981, and November 9, 1981, plaintiff told defendant of the opinion of the Missouri doctors. Plaintiff stated defendant got angry and said that Missouri X rays were no better than his and he did not need to talk to the Missouri doctors. According to the plaintiff, defendant continued to tell her to have faith in

him and trust him. She therefore decided to continue in defendant's care.

On March 11, 1982, plaintiff saw another orthopedic surgeon, Andre Edmonds, at the request of her insurance company. Edmonds reviewed plaintiff's X rays and noticed that plaintiff's left leg was longer than her right leg. According to the plaintiff, Edmonds stated he could not see how any doctor could make plaintiff's leg that much longer. He also told plaintiff that removal of the pin in her hip would alleviate her discomfort somewhat but he would not perform the surgery until plaintiff was released from defendant's care.

Plaintiff's last treatment with defendant was on May 10, 1982. At that time, plaintiff stated defendant told her he did not see the need for further surgery but he would remove the pin in plaintiff's left hip if plaintiff wanted him to. No further treatment or procedures were recommended by the defendant.

In August 1982, plaintiff returned to the University of Missouri Medical School for tests. At that time, Harper told plaintiff that her hip was dead due to avascular necrosis. Avascular necrosis is a common post-operative complication in fractures of the femoral neck in the hip joint. Approximately 25% of patients with hip fractures like plaintiff's develop this complication. Avascular necrosis is a deterioration of the bone caused by an interference with the blood supply which results in the death of the bone. In September 1982, Harper performed a total hip replacement on plaintiff.

On May 10, 1984, plaintiff filed suit against defendant, Quincy Clinic, and Blessing Hospital. Blessing Hospital was dismissed from this action with prejudice on December 20, 1985. Plaintiff alleged defendant negligently repaired her hip fracture and was negligent in his post-operative treatment. In his answer filed on September 12, 1986, defendant denied liability. On March 7, 1988, defendant was granted leave to file an affirmative defense to plaintiff's action. Defendant alleged that plaintiff's action was barred by the statute of limitations applicable to medical malpractice actions. On June 10, 1988, defendant filed a motion for summary judgment on the grounds that plaintiff's action was barred by the statute of limitations. On December 22, 1988, the trial court granted defendant's motion.

The trial court reasoned that the plaintiff knew of her injury no later than March 11, 1982, when plaintiff saw Dr. Edmonds, who commented on the fact that plaintiff's left leg was much longer than the other leg and he could not see how any doctor could have done that. The trial court also noted that prior to the March 11, 1982,

visit, plaintiff admitted in her deposition that she was told by the Missouri doctors her hip was dying, that further surgery was necessary, and that her pain was caused by avascular necrosis and bursitis. The trial court likened this case to *Gaudynski v. Corbett* (1980), 81 Ill. App. 3d 910, 401 N.E.2d 1218, *Conley v. Springfield Clinic* (1985), 130 Ill. App. 3d 369, 474 N.E.2d 421, and *Lesko v. Zuffante* (1987), 165 Ill. App. 3d 823, 520 N.E.2d 810.

Plaintiff argues the trial court erred in granting defendant's motion for summary judgment because genuine issues of material fact remain in dispute. Specifically, plaintiff maintains it is disputed whether plaintiff knew or should have known of her injury prior to May 10, 1982, the last day of her treatment with defendant. Defendant argues that the facts are undisputed; plaintiff knew of her injury before May 10, 1982. Defendant points to various admissions made by the plaintiff in her deposition where plaintiff stated she was aware that something was wrong with defendant's treatment after plaintiff's first visit to the doctors in Missouri.

■ Section 2—1005 of the Civil Practice Law provides that summary judgment is appropriate where:

"[T]he pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).)

Use of summary judgment procedure is encouraged as an aid in the expeditious disposition of lawsuit but it is a drastic means of disposing of litigation. Therefore, it should only be allowed when the right of the moving party is clear and free from doubt. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867.) When considering a motion for summary judgment, the court must construe all evidence strictly against the movant and liberally in favor of the opponent. *In re Estate of Whittington* (1985), 107 Ill. 2d 169, 483 N.E.2d 210.

Section 13—212(a) of the Code of Civil Procedure (Code) provides:

"[N]o action for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in

the action, whichever of such date occurs first \*\*\*." (Ill. Rev. Stat. 1987, ch. 110, par. 13—212(a).)

In those cases where substantial intervals exist between the time a plaintiff should have known of the physical injury and the time at which the plaintiff should have known of its negligent cause, the term "injury" in section 13—212(a) includes also knowledge that the injury was wrongfully caused. (*Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156, 421 N.E.2d 869, 874.) It is at this point that the burden is on the injured person to inquire further as to the existence of a cause of action. *Witherell*, 85 Ill. 2d at 156, 421 N.E.2d at 874.

■ Generally, when a plaintiff knew or reasonably should have known of her injury and its wrongful cause is a question of fact for the trier of fact. (*Witherell*, 85 Ill. 2d at 156, 421 N.E.2d at 874; *Kaufman v. Taub* (1980), 87 Ill. App. 3d 134, 140, 410 N.E.2d 114, 119.) However, it becomes a question of law where the facts are undisputed and only one conclusion can be drawn from them. *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 171, 421 N.E.2d 864, 868-69; *Conley*, 130 Ill. App. 3d at 370, 474 N.E.2d at 422.

We agree with the defendant that the salient facts are contained in the plaintiff's discovery deposition. In her deposition, plaintiff stated that she went to the University of Missouri Medical School in October 1981 because she was not getting any better. Plaintiff further stated that based on what the Missouri doctors told her, she thought her constant pain was caused by the fact that her hip was dying. Plaintiff stated that from the time of her surgery in May 1981 to the time of her second surgery in September 1982, she was in pain all of the time; it kept getting worse every week and month; and she was frequently awake at night. Plaintiff also stated that when she left Missouri in October 1981, she felt that defendant might have done something wrong. In addition, plaintiff stated she began to feel the defendant was not treating her properly after defendant "flared up" and got angry with her when she mentioned seeing other doctors. Plaintiff stated she continued to see defendant for treatment despite her feeling the treatment was improper because defendant told her to trust him and have faith in him. Plaintiff stated that defendant continued to tell her the fracture was healed but she knew it was not healed because she would not be in such pain if it was healed.

Plaintiff's statements in her deposition placed this case in a similar posture to that present in *Hayes v. Weyrens* (1973), 15 Ill. App. 3d 365, 304 N.E.2d 502, and *Conley v. Springfield Clinic* (1985), 130 Ill. App. 3d 369, 474 N.E.2d 421. In *Hayes*, the plaintiff, a nurse,

filed suit in September 1969 against her doctor for negligently prescribing a drug in October 1967 which made her ill. In her discovery deposition, plaintiff admitted that she ceased taking the drug in May 1967 because she knew the drug was causing her illness. The trial court granted motions for summary judgment, and the appellate court affirmed after finding no triable issues. While noting plaintiff's experience and background is a relevant consideration in determining when plaintiff should have discovered the negligent cause of her injury, the court *held*:

> "The unequivocal answers of the plaintiff constitute admissions which standing alone entitle the defendants to summary judgment as a matter of law." (*Hayes*, 15 Ill. App. 3d at 367, 304 N.E.2d at 503.)

Likewise, in *Conley*, the plaintiff's deposition established that she knew of her injury within several weeks after the surgery. Therefore, a complaint filed more than two years later was barred by the statute of limitations.

■ In addition to the evidence of plaintiff's belief she was receiving improper treatment, plaintiff also stated in her deposition that the Missouri doctors in October 1981 told her that her hip was not healing but dying, a diagnosis directly contrary to defendant's reassurances to the plaintiff. We conclude this evidence should have put plaintiff on notice of her injury before May 10, 1982, the last day of her treatment with Holt.

■ ■ Plaintiff offers an alternative argument based on the continuous treatment doctrine. The continuous course of treatment doctrine recognizes that a cause of action as to any act occurring within the continuous treatment period does not accrue until the end of the entire course of treatment. (*Chestnut v. Adeli* (1985), 131 Ill. App. 3d 24, 28, 475 N.E.2d 260, 262-63.) In *Jacobson v. Natonson* (1987), 164 Ill. App. 3d 126, 517 N.E.2d 304, the court noted that the doctrine traditionally operates to toll the four-year repose period contained in section 13–212(a) of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 13–212(a)) during a continuous course of treatment for a specific condition, and would commence running on the day of the last treatment. The repose provision states:

> "[B]ut in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." (Ill. Rev. Stat. 1987, ch. 110, par. 13–212(a).)

At the same time, the two-year limitation period would commence

during or after the course of treatment *"at such time as plaintiff discovered that a wrongful injury had been inflicted on her."* (Emphasis added.) (*Jacobson,* 164 Ill. App. 3d at 132, 517 N.E.2d at 308.) Thus, a plaintiff has, as an outside limit, four years from the end of the treatment within which to file suit *unless* prior to that time the plaintiff knew or should have known of the injury and its possible negligent cause.

Plaintiff urges this doctrine tolls the statute of limitations until the date of the last injury, or when the tortious acts ceased, which is May 10, 1982. Initially, defendant contends plaintiff has waived this issue because it was not raised in the proceedings below. On the merits, defendant urges the doctrine does not negate the fact that plaintiff admitted she thought she was being treated improperly by the defendant.

Plaintiff's complaint clearly sets forth the continuous treatment by the defendant. In her response to defendant's motion for summary judgment, plaintiff maintained that throughout her treatment by the defendant she had no notice of his negligent treatment. While plaintiff did not refer specifically to the continuous treatment doctrine, plaintiff's facts in her complaint and response discuss the issues arising under the doctrine. We conclude plaintiff sufficiently raised this issue in her pleadings in the trial court. Thus, we decline to apply the waiver rule to this issue.

■ However, we find this doctrine does not alleviate plaintiff's limitations problem due to the fact that plaintiff admitted in her deposition that she was aware that defendant's treatment may have been improper before defendant's course of treatment terminated on May 10, 1982. In her complaint, plaintiff alleged that she first discovered her injury in August 1982 when she saw the Missouri doctors a second time. However, this allegation is contradicted by plaintiff's repeated statements in her deposition that she was advised in October 1981 by the same Missouri doctors that her hip was dying and not healing and a statement that she thought defendant was improperly treating her before May 10, 1982. Under the circumstances, plaintiff's discovery in 1981 of her injury bars her action against defendant filed on May 10, 1984.

Lastly, plaintiff maintains Holt should be barred from raising the statute of limitations as a defense in this case under the doctrine of equitable estoppel. Defendant maintains plaintiff has waived this argument for failure to specifically plead estoppel in a reply to defendant's affirmative defense. Alternatively, defendant maintains that plaintiff's own actions in this case do not support equitable estoppel

because plaintiff obviously did not rely on defendant's reassurances when she independently saw Missouri physicians in October 1981.

■■ Equitable estoppel prevents a party from taking advantage of his own wrongdoing. (*Witherell v. Weimer* (1981), 85 Ill. 2d 146, 158, 421 N.E.2d 869, 875.) It has been applied to prevent a litigant, whose conduct has caused a plaintiff to delay filing suit until after the period of limitations has run, from asserting the statute of limitations as a bar to the action. (*Chestnut v. Adeli* (1985), 131 Ill. App. 3d 24, 29, 475 N.E.2d 260, 264.) All that is necessary for the doctrine is evidence that the plaintiff reasonably relied on the defendant's conduct or representations in forbearing suit. (*Witherell*, 85 Ill. 2d at 159, 421 N.E.2d at 876.) However, where a defendant's conduct terminated within ample time to allow the plaintiff to still avail himself of any legal rights he may have, the doctrine will not apply. *Smith v. Cook County Hospital* (1987), 164 Ill. App. 3d 857, 866, 518 N.E.2d 336, 342.

■ As to defendant's waiver argument, section 2—613(d) of the Civil Practice Law provides:

"The facts constituting any affirmative defense, such as *** estoppel *** and any ground or defense, whether affirmative or not, which, if not expressly stated in the pleading, would be likely to take the opposite party by surprise, must be plainly set forth in the answer or reply." (Ill. Rev. Stat. 1987, ch. 110, par. 2—613(d).)

The supreme court in *Collins v. Collins* (1958), 14 Ill. 2d 178, 151 N.E.2d 813, noted that an allegation for estoppel must be pleaded to be available and is considered waived when not alleged. In *People ex rel. Skinner v. Graham* (1988), 170 Ill. App. 3d 417, 433, 524 N.E.2d 642, 651, this court also held that a party seeking to assert estoppel to bar a statute of limitations defense must plead it and where it is not pleaded, it cannot be invoked. In *Skinner*, the estoppel issue was raised for the first time on appeal.

■■ ■ Contrary to defendant's assertions, plaintiff did raise estoppel in her pleadings by alleging in her complaint that she relied on defendant's expertise and skill and by alleging in her response filed May 31, 1988, that defendant convinced plaintiff to continue in defendant's care and have trust and faith in him. Plaintiff thereafter argued estoppel in her opposition to defendant's motion for summary judgment. We conclude plaintiff sufficiently raised this issue in the trial court for us to address the merits of her argument.

■ Plaintiff seems to suggest that her discovery of the possible negligent cause for her injury is unimportant because defendant suc-

ceeded in convincing plaintiff to remain in his care. This argument ignores the burden imposed on an injured party to investigate the cause of an injury. (*Witherell*, 85 Ill. 2d at 156, 421 N.E.2d at 874.) Additionally, to prevail on the theory of equitable estoppel, it is incumbent upon the opponent to prove that he or she relied upon some acts or representation of the defendant "*and had no knowledge or convenient means of knowing the true facts.*" (Emphasis added.) (*Pantle v. Industrial Comm'n* (1975), 61 Ill. 2d 365, 371, 335 N.E.2d 491, 495.) Here, plaintiff admits she had some facts establishing the cause of her pain, which facts ran contrary to defendant's representations. Yet, plaintiff stayed in defendant's care another six months. We note also that plaintiff had ample time to file suit within the limitations period.

▋▋ ▋ Estoppel is ordinarily a question of fact unless there is no dispute of material fact and only one inference can be drawn therefrom. Then, it becomes a question of law. (*Pantle*, 61 Ill. 2d at 369, 335 N.E.2d at 494.) As the Federal district court in *Nutty v. Jewish Hospital* (S.D. Ill. 1983), 571 F. Supp. 1050, 1052, quoting *Gary-Wheaton Bank v. Burt* (1982), 104 Ill. App. 3d 767, 777, 433 N.E.2d 315, 324, noted:

> "The lynchpin of the analysis [of equitable estoppel] often is whether a plaintiff's reliance was in fact reasonable. 'A party claiming estoppel cannot shut his eyes to obvious facts, or neglect to seek information that is easily assessable, but then charge his ignorance to others.' "

For the foregoing reasons, the order of the trial court is affirmed.

Affirmed.

LUND and GREEN, JJ., concur.