ROBERT J. CRAMSEY, Indiv. and as Independent Adm'r of the Estate of Barbara J. Cramsey, Deceased, *et al.*, Plaintiffs-Appellants, v. RUTH HATTIE KNOBLOCK, Defendant (Kent W. Barber *et al.*, Defendants-Appellees).

Fourth District   No. 4—89—0363

Opinion filed December 14, 1989.—Rehearing denied January 17, 1990.

Goehl & Schuering, of Quincy, and J. Patrick Wheeler, of Canton, Missouri, for appellants.

Lee Humphrey and Susan M. Hickman, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Springfield, for appellee Kent W. Barber.

Heyl, Royster, Voelker & Allen, of Peoria (Karen L. Kendall, Frederick P. Velde, and Adrian E. Harless, of counsel), for appellee Quincy Clinic.

JUSTICE SPITZ delivered the opinion of the court:

This is an appeal by plaintiffs from an order of the circuit court of Adams County dismissing the medical malpractice portions of the complaint. On October 1, 1986, the plaintiffs, Catherine M. Baker, Robert J. Cramsey II, and Robert J. Cramsey, individually and as independent administrators of the estate of Barbara J. Cramsey, deceased, filed a four-count complaint against Ruth Hattie Knoblock seeking to recover damages resulting from the wrongful death of Barbara Cramsey ensuing from an automobile collision allegedly proximately caused by the negligence of Knoblock. Knoblock is not a party to this appeal. On March 31, 1988, an amended complaint was filed by which the plaintiffs added two counts each against defendants Kent W. Barber, M.D., and the Quincy Clinic, a partnership, for the wrongful death of decedent and loss of society to the individual plaintiffs.

Counts V through VIII of the amended complaint alleged that after Barbara Cramsey suffered a head injury in the collision of April 6, 1985, she became a patient of Barber and the Quincy Clinic. The counts further allege Barber, an orthopedic surgeon, failed to have a "CT" scan (computerized tomography) performed on Barbara Cramsey even though she complained of nausea, headaches, weight gain, and visual problems and failed to perform other tests to determine if a tumor existed, failed to recognize and treat the tumor, and failed to associate himself with a physician qualified to recognize and treat the tumor. These counts further allege that in December 1985, it was determined Barbara Cramsey had a tumor, from which she died on February 4, 1986.

After defendants filed a motion to dismiss the amended complaint, plaintiffs filed a second-amended complaint June 28, 1988. Counts V through VIII of the second-amended complaint are essentially the same as those counts in the first-amended complaint, with the exception that plaintiffs further alleged plaintiff administrator of the estate first became aware the defendants failed to provide proper medical care on September 1, 1987, when Dr. John Scott, a member of the

Quincy Clinic, stated during his deposition that a CT scan may have been required under the circumstances. The amended complaint also alleged that plaintiffs had not acquired hospital records of decedent until after April 1, 1986. These further allegations were added only to count V against Barber.

On July 20, 1988, the clinic filed a motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—619) on the grounds that the action by plaintiffs was barred by the statute of limitations since it was filed more than two years after the date plaintiffs knew or should have known, through the exercise of reasonable diligence, of the existence of the decedent's injury. As an additional ground, the clinic urged plaintiffs failed to comply with section 2—622 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—622). On August 27, 1988, Barber filed a section 2—615 motion (Ill. Rev. Stat. 1987, ch. 110, par. 2—615) to dismiss the counts against him alleging failure to comply with section 2—622. In addition, Barber filed a section 2—619 motion based on the statute of limitations.

On November 21, 1988, plaintiffs were granted leave to file a third-amended complaint. In the third-amended complaint, each of counts V through VIII contained a paragraph concerning the allegation of when plaintiffs became aware of the alleged failure to provide proper medical care. In addition, this third-amended complaint added a count against each of the defendants, counts IX and X. In these new counts, plaintiffs alleged the defendants named wilfully and fraudulently concealed the cause of action in that Barber's medical reports failed to state any connection between the trauma caused by the collision and the brain tumor and Scott also failed to so state a causal connection in the death certificate even though the causal connection was known. Plaintiffs alleged they knew they had a cause of action against defendants on September 1, 1987, and commenced the action on or about March 31, 1988, within five years of the discovery thereof. On December 2, 1988, plaintiffs moved to amend count X of the third-amended complaint. Of significance is the alleged allegation that Barber was a partner and agent of the clinic. On December 20, 1988, the motion to amend count X was granted.

Defendants renewed their motions to dismiss, adding the additional contention that the five-year statute of limitations for fraudulent concealment of a cause of action was not applicable to the case at bar. On February 23, 1989, plaintiff administrator filed an affidavit in which he states he talked to Scott within eight weeks of his wife's death and at that time Scott did not discuss Barber's treatment of de-

cedent, or the failure to perform a CT scan or other tests. Nor did Scott opine at that time that such additional tests should have been performed.

On February 24, 1989, the trial court entered an order granting the motions to dismiss as to Barber and Quincy Clinic because the actions are barred by the statute of limitations. An additional reason for the dismissal of counts IX and X was a failure to state a cause of action, since there were no allegations of misrepresentation made with intent to deceive or that plaintiffs detrimentally relied on such misrepresentations. In addition, the trial court stated that because the certifying health professional who signed the certificate filed pursuant to section 2—622 was a practitioner of a different specialty than Barber, counts V through X should be dismissed for this reason as well. The trial court also found there is no just reason to delay enforcement or appeal.

On March 23, 1989, plaintiffs filed a motion to reconsider the order dismissing counts V through X. The trial court denied the motion to reconsider on April 7, 1989, and on April 28, 1989, plaintiffs filed a notice of appeal.

The first issue to consider is whether the trial court erred in dismissing the third-amended complaint for failure to obtain a proper health-care professional's certification. Plaintiffs argue that when a physician is a named defendant in a lawsuit, any licensed physician is legally qualified to evaluate the treatment and a specialist in a field is not statutorily required since they are neither statutorily regulated or defined under section 11 of the Medical Practice Act of 1987 (Ill. Rev. Stat. 1987, ch. 111, par. 4400—11). Section 2—622(a)(1) of the Code states:

> "In any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice, the plaintiff's attorney or the plaintiff, if the plaintiff is proceeding pro se, shall file an affidavit, attached to the original and all copies of the complaint, declaring one of the following:
>
> 1. That the affiant has consulted and reviewed the facts of the case with a health professional who the affiant reasonably believes is knowledgeable in the relevant issues involved in the particular action and who practices in the same specialty as the defendant if the defendant is a specialist; that the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in the particular action that there is a reasonable and

meritorious cause for the filing of such action; and that the affiant has concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for filing of such action. If the affidavit is filed as to a defendant who is a physician licensed to treat human ailments without the use of drugs or medicines and without operative surgery, a dentist, a podiatrist, or a psychologist, the written report must be from a health professional licensed in the same profession, with the same class of license, as the defendant. For affidavits filed as to all other defendants, the written report must be from a physician licensed to practice medicine in all its branches. In either event, the affidavit must identify the profession of the reviewing health professional. A copy of the written report, clearly identifying the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists, must be attached to the affidavit, but information which would identify the reviewing health professional may be deleted from the copy so attached."

■ Other reviewing courts have interpreted this section to mean that if defendant is a physician, all that is required is affiant be a physician even though defendant holds himself out as a specialist. (*Relaford v. Kyaw* (1988), 173 Ill. App. 3d 1034, 527 N.E.2d 1328 (thorasic surgeon as to radiologist); *Hagood v. O'Conner* (1988), 165 Ill. App. 3d 367, 519 N.E.2d 66 (specialty of certifying physician not disclosed).) As plaintiffs point out, the first district has declared the provision unconstitutional because it delegates a judicial function to a professional group. (*DeLuna v. St. Elizabeth's Hospital* (1989), 184 Ill. App. 3d 802, 540 N.E.2d 847, *appeal allowed* (1989), 127 Ill. 2d 614.) We need not decide, however, whether the certificate is adequate or whether the provision is unconstitutional since defendants have not addressed this issue and it would therefore seem defendants concede, at a minimum, that the affidavit submitted by plaintiff was sufficient.

■ Before deciding whether the trial court erred by ruling the statute of limitations began to run on February 4, 1986, as a matter of law, it must be noted that whenever the granting of a motion to dismiss is reviewed, all well-pleaded facts alleged in the complaint are taken as true, and the test for determining the propriety of granting the motion to dismiss is whether it appears no set of facts may be proved so as to entitle plaintiff to recover from defendants. (*Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 485 N.E.2d 372, *cert. denied* (1986), 475 U.S. 1122, 90 L. Ed. 2d 187, 106 S. Ct. 1641;

*Johnston v. City of Bloomington* (1979), 77 Ill. 2d 108, 395 N.E.2d 549.) Any allegations which are merely conclusions of fact, unsupported by allegations of specific facts, are not admitted, however. *Howell v. Blecharczyck* (1983), 119 Ill. App. 3d 987, 457 N.E.2d 494.

The primary basis of the dismissal in this case was the failure of plaintiffs to bring the cause of action within the appropriate period delineated by the statute of limitations. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(5).) The statute of limitations applied in this case is section 13—212(a) of the Code, which states:

> "Except as provided in Section 13—215 of this Act [fraudulent concealment of a cause of action] no action for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." Ill. Rev. Stat. 1987, ch. 110, par. 13—212(a).

In this case, the facts are uncontroverted. Plaintiffs contest an inference from the facts, to wit: plaintiffs knew or should have known, through the use of reasonable diligence, that the death of decedent was wrongfully caused on February 4, 1986, the date of decedent's death. There is no question plaintiffs knew of the injury at that time. Defendants suggest plaintiffs should have known of the allegedly wrongful cause of decedent's death because the tumor which caused the death was discovered in December 1985, and at that time plaintiffs should have known the tumor had been previously undiagnosed and untreated in spite of prior complaints to Barber.

■ Although not a medical malpractice case, the Illinois Supreme Court has recently discussed the statute of limitations in a wrongful death case, noting that the statute begins to run when the party knows or reasonably should know not only that an injury has occurred, but also that the injury was wrongfully caused, and deciding that since a cause of action for wrongful death cannot accrue until death occurs, the limitation period cannot begin to run prior to the death. (*Wyness v. Armstrong World Industries, Inc.* (1989), 131 Ill. 2d

403.) Since it is here alleged in counts VI and VIII that the individual plaintiffs suffered a loss of society by reason of the death of Barbara Cramsey, that injury could also not have occurred prior to the death and the limitation period on that cause of action begins to run at death, and no earlier. The estate did allege Barbara Cramsey experienced great pain and suffering prior to her death. These allegations are made in the wrongful death counts. Such pain and suffering could also only have occurred prior to death, such that the pain and suffering complained of could not have occurred after February 4, 1986. Therefore, except for the possible argument plaintiffs did not discover the injuries to be wrongfully caused until a later time, the limitation period would ordinarily begin to run on February 4, 1986.

Plaintiffs argue that until Scott testified in his deposition on September 1, 1987, they did not learn that Barber should have diagnosed the tumor prior to December 1985. Therefore, according to plaintiffs, the limitation period should begin to run on September 1, 1987. Defendants counter that Scott's statement may add evidence of negligence, but plaintiffs should have known of the failure to diagnose and treat the tumor from all the facts which existed on February 4, 1986.

In *Saunders v. Klungboonkrong* (1986), 150 Ill. App. 3d 56, 59-60, 501 N.E.2d 882, 884-85, the court discussed the law relevant to section 13—212:

"Under this statute, a plaintiff must bring his action within two years of the date on which he knew or reasonably should have known of his injury in order to maintain a cause of action for damages. Case law has interpreted this to mean that the period begins to run when the plaintiff knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. [Citations.] 'Wrongfully caused,' however, does not mean knowledge of a specific defendant's negligent conduct or knowledge that an actionable wrong was committed. [Citations.] Rather, a plaintiff knows or should know his injury was 'wrongfully caused' when he 'becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved.' *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 416, 430 N.E.2d 976, 980-81.

In determining when a plaintiff knew or reasonably should have known that his injury was caused by a defendant's wrongful conduct, courts often look to the nature of the injury itself. [Citation.] If the injury is traumatic in nature, that is, immedi-

ate and caused by an external force or violence, the plaintiff knows or should know of his right to sue when injured. [Citations.] The more obvious the injury, the more easily a plaintiff should be able to determine its cause. [Citations.] If the injury is, however, an aggravation of a physical problem which may naturally develop, absent negligent causes, a plaintiff is not expected to immediately know of either its existence or potential wrongful cause. [Citations.] Until the plaintiff knows or should know that his condition, seemingly innocent in causation, is perhaps the result of another's negligent acts, he has had no opportunity to discover that a cause of action exists. [Citations.] The limitations period begins to run when the plaintiff becomes aware that the cause of his problem stems from another's negligence and not from natural causes."

A section 2—619 motion affords a means of disposing of issues of law or of easily proved facts at the onset of a case, and if the defects are not apparent on the face of the pleadings, affidavits may be employed to bring affirmative matters to light which would bar the litigation. *Rowan v. Novotny* (1987), 157 Ill. App. 3d 691, 510 N.E.2d 1111.

■ Death may or may not be such a traumatic event as to preclude the application of the discovery rule. For example, a stillbirth is a traumatic event that should immediately put someone on notice that something was wrong. (*Nordsell v. Kent* (1987), 157 Ill. App. 3d 274, 510 N.E.2d 606.) However, there are instances where the death may have appeared to have occurred through no fault of the doctor, and in such cases the discovery rule will apply so that the limitation period begins to run when plaintiff discovered the fact of defendant's negligence, not the fact of death. See *Arndt v. Resurrection Hospital* (1987), 163 Ill. App. 3d 209, 516 N.E.2d 1.

In *Lutes v. Farley* (1983), 113 Ill. App. 3d 113, 446 N.E.2d 866, the court stated that when a party knew or reasonably should have known of the injury, the party claiming injury has the burden to inquire as to the existence of a cause of action. The court distinguished sudden, traumatic events, such as stillbirth, which should properly put a party on notice, from an injury with an insidious onset such that a lay person could not determine with particularity the date of injury. In *Fure v. Sherman Hospital* (1978), 64 Ill. App. 3d 259, 380 N.E.2d 1376, the court noted the discovery rule does not apply where the party failed to use reasonable diligence to discover the cause of injury. In *Fure*, plaintiff did not act with reasonable diligence because she failed to demand hospital records within two years of her husband's death, but the court added that where doctors did not explain the

cause of death in lay terms and listed the death on the death certificate in technical medical terms, the failure of the widow to discover the actual cause of death within two years did not result from lack of diligence.

In the case at bar, the plaintiffs were placed on notice of the injury in February 1986, when Barbara Cramsey died. Plaintiffs already were aware that the defendants had previously failed to diagnose and treat the tumor. As a result, the trial court properly determined the statute of limitations began to run on the date of Barbara Cramsey's death.

Plaintiffs suggest there are two theories which, if applied to this case, would mitigate against the harsh application of the statute of limitations and allow plaintiffs to assert a cause of action. Therefore, it must be decided whether defendants are estopped from raising the defense of the statute of limitations, or whether the trial court erred in dismissing counts IX and X for failure to allege sufficient facts to bring the action within the extended limitation period for fraudulent concealment.

In *Smith v. Cook County Hospital* (1987), 164 Ill. App. 3d 857, 865-66, 518 N.E.2d 336, 342, estoppel to assert the statute of limitations as a defense was discussed:

"If a claim is legally time barred, the only other way for plaintiff to avoid that bar is to show that the defendant is precluded from asserting a legal time-bar defense based on some theory of equity. Equitable estoppel is a theory which precludes a litigant from denying prior assertions in cases where it would be unjust to permit the litigant to disavow express and implied statements upon which another party has relied and which have caused him to forego filing his suit. (*Real v. Kim* (1983), 112 Ill. App. 3d 427, 434, 445 N.E.2d 783, 788.) Basically, the theory provides that a defendant cannot benefit from his own misconduct. However, the plaintiff cannot show mere misconduct, but must be able to show that the defendant said or did something to lull or induce the plaintiff to delay the filing of his claim until after the limitations period has run. (*Real v. Kim* (1983), 112 Ill. App. 3d 427, 445 N.E.2d 783.) Moreover, the doctrine of equitable estoppel will not apply to a case if the defendant's conduct terminated within ample time to allow the plaintiff to still avail himself of any legal rights he may have had. The court, in determining whether the doctrine of equitable estoppel is applicable to the case, will, of course, consider whether a fiduciary relationship such as a doctor-patient relationship ex-

isted between plaintiff and defendant. (*Witherell v. Weimer* (1981), 85 Ill. 2d 146, 421 N.E.2d 869.) However, whether or not the doctrine is applicable will depend on the particular facts of each case and not merely on the nature of the relationship of the parties."

The Illinois Supreme Court's decision in *Witherell v. Weimer* (1987), 118 Ill. 2d 321, 515 N.E.2d 68, held that statements by a physician to a patient concerning the effect of taking birth control pills could result in defendant physician being estopped from raising the statute of limitations because plaintiff reasonably relied on those statements, her treating physician's opinions, so as not to initiate the action within the statutory period. It was not necessary for plaintiff to establish the representations were made with an intent to mislead, deceive, or delay. *Witherell*, however, seems distinguishable from the case at bar. In *Witherell*, plaintiff continued taking birth control pills after being assured her condition did not result therefrom. As a result, plaintiff did not become aware of her cause of action until after the statutory period of limitations, commencing when plaintiff knew or should have reasonably discovered the cause of action, had expired. (See *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 421 N.E.2d 869 (companion case).) In the case at bar, plaintiffs were not the patient. Instead, plaintiffs' cause of action arose when decedent died. After Cramsey's death, plaintiffs did not detrimentally rely on statements by defendants or their agents and did investigate, discovering what plaintiffs have now alleged to be a cause of action within sufficient time to file a complaint so as to come within the original statute of limitations. Estoppel is an equitable principle which allows courts to do justice where strict application of the law might result in injustice. But here, unlike *Witherell*, plaintiffs had an opportunity to file an action within the limitation period, but did not do so—for no reason that can be attributed to defendants' statements or conduct.

■■ ■ Nor do we believe this is a case of fraudulent concealment. Section 13—215 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 13—215 (formerly Ill. Rev. Stat. 1981, ch. 83, par. 23)) states:

"If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards."

In *Chicago Park District v. Kenroy, Inc.* (1980), 78 Ill. 2d 555, 402 N.E.2d 181, the Illinois Supreme Court considered when concealment of a cause of action would be sufficient to require the applica-

tion of the extended statute of limitations. Such concealment requires affirmative acts or representations designed to prevent discovery of the cause of action. Silence alone does not ordinarily constitute fraudulent concealment, unless the person occupies a fiduciary relationship to plaintiff, such as a public officer to a political entity. The court also noted that fraudulent concealment by someone other than defendant does not ordinarily toll the statute of limitations, unless the person fraudulently concealing the cause of action is in privity with or occupies the agency relationship with defendant, in which case defendant's knowledge or approval of the concealment will toll the statute of limitations.

In *Smith* (164 Ill. App. 3d at 862-63, 518 N.E.2d at 340), the fraudulent concealment exception to the general statute of limitations was also discussed:

"The concealment contemplated in section 13—215 must consist of affirmative acts or representations which are calculated to lull or induce a claimant into delaying filing of his claim or to prevent a claimant from discovering his claim. Mere silence on the part of the defendant and failure by the claimant to learn of the cause of action are not enough. (*Zagar v. Health & Hospitals Governing Comm'n* (1980), 83 Ill. App. 3d 894, 898, 404 N.E.2d 496, 500.) Moreover, fraudulent misrepresentations which constitute the basis of the claim do not amount to fraudulent concealment unless these actions tended to conceal the cause of action. (83 Ill. App. 3d at 898, 404 N.E.2d at 500.) Finally, this exception does not apply when the party affected by the fraud might, with ordinary diligence, have discovered it. (*Greenock v. Rush Presbyterian-St. Luke's Medical Center* (1978), 65 Ill. App. 3d 266, 271, 382 N.E.2d 321, 324.) If the claimant discovers the fraudulent concealment, or should have discovered it through ordinary diligence, and a reasonable time remains within the remaining limitations period, section 13—215 will not toll the running of the limitations period. (*Real v. Kim* (1983), 112 Ill. App. 3d 427, 435, 445 N.E.2d 783, 789.) Illinois courts have found that discovery of a claim with as little as 5½ months remaining within the statute of limitations period constitutes a reasonable time within which to file a medical malpractice claim under section 13—215. (See *Brown v. Mason* (1985), 132 Ill. App. 3d 439, 477 N.E.2d 61.) While reasonableness is generally a fact question, it may be determined by a court, without a hearing on that issue, if no hearing on reasonableness is requested and if it is clear that a reasonable time

did in fact remain within the statute of limitations. See *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 402 N.E.2d 560, *appeal dismissed sub nom. Woodward v. Burnham City Hospital* (1980), 449 U.S. 807, 66 L. Ed. 2d 11, 101 S. Ct. 54."

Therefore, even assuming defendants acted so as to fraudulently conceal the cause of action, since plaintiffs had sufficient time to file the complaint within the limitation period, section 13—215 does not toll the running of the statute of limitations.

Moreover, in *Fure* (64 Ill. App. 3d 259, 380 N.E.2d 1376), it was decided the mere failure of a physician to disclose a questionable course of treatment to some third party representing a deceased patient is not fraudulent concealment because, while the doctor has a fiduciary relationship with the patient, requiring the doctor to neither deceive nor withhold vital information from the patient, that fiduciary relationship does not extend to the legal representative of decedent. A physician is not required to charge himself or his partner with professional negligence in order to further a malpractice action. No facts constituting fraudulent concealment are alleged in this case.

 Last, plaintiffs argue they should have been allowed to amend counts IX and X. In *Schenker v. Chicago Title & Trust Co.* (1984), 128 Ill. App. 3d 488, 491-92, 470 N.E.2d 1264, 1267, the trial court's discretion to allow an amendment to a pleading is discussed:

"It is recognized that the decision whether to allow an amendment to a complaint lies within the sound discretion of the trial court, and its decision will not be disturbed absent a showing of an abuse of that discretion. (*Farnor v. Irmco Corp.* (1979), 73 Ill. App. 3d 851, 858, 392 N.E.2d 591, *appeal denied* (1979), 79 Ill. 2d 620.) A trial court's power to allow amendments should be freely exercised in order that litigants may fully present their causes of action. (*Scala/O'Brien Porsche Audi, Inc. v. Volkswagen of America, Inc.* (1980), 87 Ill. App. 3d 757, 762, 410 N.E.2d 205.) The test to be applied in this regard is whether a denial of the request to amend furthers the ends of justice. *Plocar v. Dunkin' Donuts of America, Inc.* (1981), 103 Ill. App. 3d 740, 749, 431 N.E.2d 1175.

Ordinarily, an amendment should not be permitted to include matters which the pleader had full knowledge of at the time the original complaint was drafted and no excuse is presented for not putting its substance in the original pleading; however, an amendment will be allowed where justice is not served by denying leave to amend. (*Lawson v. Hill* (1979), 77 Ill. App. 3d 835, 845, 396 N.E.2d 617.) Further, doubts should

be decided in favor of allowance of the amendment. *Lawson v. Hill* (1979), 77 Ill. App. 3d at 835, 845, 396 N.E.2d 617."

Plaintiffs have failed to inform this court of any additional facts which could be alleged which would alter the result reached below. Therefore, the refusal to allow further amendment by plaintiffs was not an abuse of discretion by the trial court.

For the foregoing reasons, the order of the circuit court of Adams County is affirmed.

Affirmed.

STEIGMANN and McCULLOUGH, JJ., concur.