**Jerry MONTGOMERY, Plaintiff,**

v.

**The UNIVERSITY OF CHICAGO; the University of Chicago's Department of Ophthalmology; the University of Chicago's Administration or Board of Directors; Dr. Peter H. Morse; Dr. Victor M. Elner; and Dr. Eric J. Delpiero, Defendants.**

**No. 89 C 07588.**

United States District Court, N.D. Illinois, E.D.

May 29, 1991.

Jerry Montgomery, pro se.

Peter G. Bell, Cassiday, Schade & Gloor, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Defendants University of Chicago and Peter H. Morse (collectively, "UC Hospitals")[1] have moved for summary judgment on Jerry Montgomery's amended complaint. Montgomery's action, filed under

---

**1.** The University of Chicago's Department of Ophthamology, the University of Chicago's Administration or Board of Directors, and Victor Elner were dismissed for want of prosecution on August 17, 1990. *See also* Minute Order of August 28, 1990 (correcting clerical error). Robert Del Pero has never been served, see Memorandum in Support at 2 n. 1, and we therefore dismiss him pursuant to defendants' Fed.R.Civ.P. 4(j) motion.

42 U.S.C. § 1983 (1988), alleges medical malpractice by UC Hospitals in its performance of surgery on his eye in 1985. UC Hospitals contends that Montgomery's suit is time-barred under the applicable statute of limitations and repose. For the reasons set forth below, we agree, and grant the motion for summary judgment.[2]

## I. Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

The point at which a plaintiff knew or should have known of his injury and its wrongful cause, see *infra*, is generally a question of fact for the trier of fact. *Neaterour v. Holt*, 188 Ill.App.3d 741, 746, 136 Ill.Dec. 160, 164, 544 N.E.2d 846, 850 (4th Dist.1989), *appeal denied*, 129 Ill.2d 565, 140 Ill.Dec. 673, 550 N.E.2d 558 (1990). Where the facts are undisputed, however, and only one conclusion can be drawn from them, the point at which a plaintiff knew or should have known of his injury and its wrongful cause becomes a question of law suitable for summary judgment resolution. *Id.*

## II. Factual Background

We take the factual background pertinent to the motion for summary judgment from the amended complaint and plaintiff's deposition. Montgomery's relevant medical history begins on or about September 18, 1984 when a gun discharged and a "foreign substance" (possibly a piece of metal) lodged in his eye. Amended Complaint at 8. Although he received emergency treatment at the Gary (Indiana) Methodist Hospital, the foreign substance remained in his right eye. *Id.* Unsatisfied with his treatment in Indiana, Montgomery visited the University of Chicago's ophthalmology department in late February, 1985. *Id.* There, doctors made arrangements to surgically remove the foreign body from Montgomery's eye. *Id.*

On or around March 13, 1985, doctors at the University of Chicago, including defendant Morse, operated on Montgomery's eye. *Id.* These doctors told Montgomery post-surgery that the foreign substance had been removed. *Id.* After his release from the University hospital, Montgomery had no further contact with UC Hospitals or others at the University hospital. Montgomery Deposition at 108.

Despite the doctors' assurances that the surgery had been successful in removing the metal fragment from his eye, Montgomery had his doubts almost immediately. Amended Complaint at 8 ("the defendants verbally reported that they had removed the [foreign body] (but the plaintiff could feel it)"). Asked at his deposition at what point he reached the conclusion that, despite what his doctors were telling him, he still had a foreign body in his eye, Montgomery answered:

> right after surgery. I've always suspected, even after surgery, that I've always had the—yes, I've always—because the pain was there. If—I never had no pain in my eyes prior to being injured, so I know the foreign body—the associated pain was there in the same specific area.

Montgomery Deposition at 147; *see also id.* (Question: "So you're saying that the pain that you had prior to surgery was the same type of pain that you had after surgery, so, therefore, you believe that the foreign body was still there?" Answer: "Yes ... I could feel the foreign body in my eye at this present time").

---

**2.** The defendants' motion to strike Montgomery's memorandum in support of his response to defendants' motion for summary judgment is denied as moot.

A month after the surgery, Montgomery complained to an aunt about his eye. *Id.* at 108–09. She offered to take him to see a doctor near her home in Freeport, Illinois that "would help [Montgomery], take the stuff out of [his] eye." *Id.* at 109. Montgomery stayed with his aunt in Freeport for five or six months, until around September 1985, and visited at least three doctors in the area. *Id.* at 110.

At least one of the Freeport doctors conducted "scans" of Montgomery's eye, and "did confirm the fact that the foreign body was in the eye." *Id.* at 113, 114; *see also id.* at 143–44 ("After surgery, when I went to Freeport and the doctors told me, 'Well, my machine is showing the presence of a foreign body,'" I realized that there was something still in my eye).

Montgomery apparently received no treatment from any of the Freeport doctors, and returned to Gary, Indiana sometime prior to November 1985. *d.* at 116–17. Montgomery has been incarcerated in an Indiana prison ever since, convicted of the killing of his father—a crime he explains as resulting from a "freak reaction," or "bad trip," to certain prescription pain-killers he took for his eye. *Id.* at 117–24. Montgomery commenced the instant suit on October 6, 1989, the date his complaint and in forma pauperis petition were received by the district court clerk's office.

### III. Statute of Limitations

#### A. *Paragraph 13–212(a)*

The relevant statute of limitations provides as follows:

(a) Except as provided in Section 13–215 of this Act, no action for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death.

\*    \*    \*    \*    \*    \*

(c) If the person entitled to bring an action described in this Section is, at the time the cause of action accrued ... (ii) imprisoned on a criminal charge and the claim is not against the Illinois Department of Corrections or any past or present employee or official of the Department of Corrections, then the period of limitations does not begin to run until ... (ii) the person ceases to be imprisoned.

Ill.Ann.Stat. ch. 110, para. 13–212(a), (c) (Smith–Hurd 1984 & 1990 Supp.).[3]

Paragraph 13–215, described in paragraph 13–212(a) as a kind of limitation, provides that

[i]f a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards.

---

**3.** Montgomery, pursuing his complaint *pro se,* relies in part on Illinois law providing a longer limitations period. *See* Response at 2 ("Ill.Rev. Stat., ch. 83 § 22.1 ... allows a person to bring a cause of action for Tort or Breach of Contract arising from Patient Care Ten (10) years after treatment.... [T]he plaintiff is arguing from a 1975 edition of the Illinois Revised Statu[t]e ... [t]he law library at the [Indiana] prison does not carry [current] Illinois Law Books."). That law, however, has since been repealed. *See Smith v. Cook County Hosp.,* 164 Ill.App.3d 857, 861 n. 2, 115 Ill.Dec. 811, 814 n. 2, 518 N.E.2d 336, 339 n. 2 (1st Dist.1987) ("[T]he predecessor to section 13–212, found in Ill.Rev.Stat.1977, ch. 83, par. 22.1, was amended with an effective date of Sept. 19, 1976. That version is the same as the current section 13–212. The 1976 amendment reduced the outside time limit for filing claims from five years (Ill.Rev.Stat.1975, ch. 83, par. 22.1) to four years. Prior to that, courts had been applying a ten year outside limit to malpractice claims.").

Ill.Ann.Stat. ch. 110, para. 13–215 (Smith–Hurd 1984).

■ The undisputed facts, taken from the complaint and Montgomery's deposition, indicate that Montgomery believed prior to September 1985 (in fact, perhaps several months prior to September 1985) that even after his surgery at the University of Chicago Hospital a foreign substance was still in his right eye. As UC Hospitals points out, Montgomery

> stated that after surgery he "knew [he had] a foreign body in [his] eye" because he "could feel it; that he told his aunt the problem and she offered to "take [Plaintiff] to a doctor who could ... take the stuff out of [Plaintiff's] eye"; and that from April of 1985 to September of 1985, Plaintiff stayed with his aunt in Freeport, Illinois, during which period Plaintiff sought treatment for his eye from at least three doctors.

Reply at 2–3 (citing Amended Complaint at 8; Montgomery Deposition at 109–10, 113, 147).

These facts are sufficient to start the limitations clock. *Cramsey v. Knoblock*, 191 Ill.App.3d 756, 762, 138 Ill.Dec. 737, 742, 547 N.E.2d 1358, 1363 (4th Dist.1989). Under Illinois law, Montgomery must bring his complaint within two years of when he " 'knew or reasonably should have known of his injury.' " *Id.* (quoting *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 416, 58 Ill.Dec. 725, 729–30, 430 N.E.2d 976, 980–81 (1981)). This means that the limitations period

> "begins to run when the plaintiff knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. 'Wrongfully caused,' however, does not mean knowledge of a specific defendant's negligent conduct or knowledge that an actionable wrong was committed. Rather, a plaintiff knows or should know his injury was 'wrongfully caused' when he 'becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved.' "

*Id.* (quoting *Knox College*, 88 Ill.2d at 416, 58 Ill.Dec. at 729–30, 430 N.E.2d at 980–81).

Here, Montgomery believed "right after surgery" that the doctors at the University of Chicago hospital had failed to remove the foreign substance from his eye; he "could feel the foreign body in [his] eye." These facts demonstrate that Montgomery "knew of [his] injury and attributed the injury to defendants' wrongful conduct," and that failure to file his complaint until October 6, 1989 warrants summary judgment for defendants. *See Conley v. Springfield Clinic*, 130 Ill.App.3d 369, 369–71, 85 Ill.Dec. 693, 693–694, 474 N.E.2d 421, 421–22 (4th Dist.1985) (plaintiff had shoulder pain "since the time of the operation," and suspected that operation had been botched; defendant doctor and clinic granted summary judgment when suit not filed within two years of this realization, pursuant to paragraph 13–212).

■ As defendants suggest, even if Montgomery's belief immediately after the surgery was not enough to start the limitations clock ticking—because, perhaps, he gave some credence to the doctors' story that the foreign substance had been removed, see Response at 13, the clock certainly began ticking when a Freeport, Illinois doctor conducted tests that "indicate[d] that a foreign body [was] in [Montgomery's] eye." Montgomery Deposition at 114; *see also id.* at 113, 143–44. There can be no doubt that Montgomery had a second opinion confirming his own belief that the University of Chicago surgery had not been successful, and that he sought and received this additional medical advice well before October 6, 1987. Similar facts justified summary judgment for a defendant doctor and clinic in *Neaterour*, 188 Ill.App.3d at 748, 136 Ill.Dec. at 165, 544 N.E.2d at 851 ("plaintiff's repeated statements in her deposition that she was advised in October 1981 ... that her hip was dying and not healing and a statement that she thought defendant was improperly treating her before May 10, 1982 ... bars her action against defendant filed on May 10, 1984").

■ Contrary to Montgomery's argument in his response to the motion for summary judgment, "absolute knowledge" is not the standard used to start the limitations period. Montgomery suggests that because he never got copies of the Freeport doctor's tests showing the presence of the foreign substance in his eye, Montgomery Deposition at 113–14, and because X-rays taken by other Freeport doctors failed to reveal the foreign substance, the limitations period did not begin to run; he was "merely suspicious" that the foreign substance was still in his eye and did not have what he would call the requisite "absolute knowledge of the prescence [sic] of the foreign substance." Response at 5–6. In fact, absolute knowledge is not the critical criterion. A plaintiff's cause of action accrues when he " 'becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved.' " *Cramsey*, 191 Ill. App.3d at 762, 138 Ill.Dec. at 742, 547 N.E.2d at 1363 (quoting *Knox College*, 88 Ill.2d at 416, 58 Ill.Dec. at 729–30, 430 N.E.2d at 980–81). The one positive affirmation in Freeport, coupled with his own belief, is more than adequate to show that Montgomery "possessed ... sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct [was] involved." *Id.*

Thus, Montgomery's suit should have been filed no later than September 1987, to beat the two-year statute of limitations, or by March 15, 1989, to beat the four-year repose period, since his last day of treatment at UC Hospitals was March 15, 1985. Montgomery's failure to adhere to the limitations and repose periods compels us to enter summary judgment for the defendants.

### B. Paragraph 13–215

■ Alternatively, Montgomery argues that UC Hospitals "fraudulently concealed" the existence of his cause of action against it by telling him that his post-operative pain was normal, and that they had certainly removed the foreign body from his eye. Ill.Ann.Stat. ch. 110, para. 13–215, quoted *supra*, would give Montgomery an extra year to file his complaint, and would thus make the filing of the instant complaint timely.

However, the "fraudulent concealment" contemplated in paragraph 13215 "must consist of affirmative acts or representations which are calculated to, and in fact do, prevent the discovery of the cause of action; mere silence of the defendant [is] not sufficient." *Zagar v. Health & Hosps. Governing Comm'n of Cook County*, 83 Ill.App.3d 894, 898, 39 Ill.Dec. 112, 116, 404 N.E.2d 496, 500 (1st Dist.1980). Montgomery never saw the defendants after discharge following his surgery, and he sought subsequent treatment and advice from Freeport doctors, suggesting both that UC Hospitals had little opportunity to engage in activity that would fraudulently conceal any cause of action Montgomery had against it, and that whatever activity it did engage in was unsuccessful, given that at least one Freeport doctor conducted tests indicating the presence of the foreign body, a finding that he related to Montgomery. *See id.* (no fraudulent concealment "if the party affected by the fraud might, with ordinary diligence, have discovered it"). His fraudulent concealment argument fails.

■ Montgomery's estoppel argument fails for similar reasons. He contends that "defendants are estopped from asserting the Statu[t]e of Limitations defense because the[y] wantonly left a foreign substance in the plaintiff's body and wantonly concealed this fact from the plaintiff and other health care providers." Response at 7. Equitable estoppel, as defined by the Illinois Supreme Court, prevents a party from taking advantage of his own wrongdoing. *Witherell v. Weimer*, 85 Ill.2d 146, 158–59, 52 Ill.Dec. 6, 12–13, 421 N.E.2d 869, 875–76 (1981). Grounds for invoking estoppel are established when the plaintiff " 'reasonably rel[ies] on the defendant's conduct or representations in forbearing suit.' " *Id.* at 159, 52 Ill.Dec. at 13, 421 N.E.2d at 876 (quoting *Bomba v. W.L. Belvidere, Inc.*, 579 F.2d 1067, 1071 (7th Cir. 1978)). Montgomery certainly did not rely

on UC Hospitals' conduct when he contacted several doctors in Freeport. Furthermore, as defendants point out, where their conduct terminated with ample time to allow Montgomery to still avail himself of any legal rights he may have had, equitable estoppel is inapplicable. *Neaterour*, 188 Ill.App.3d at 749, 136 Ill.Dec. at 166, 544 N.E.2d at 852. Montgomery's deposition reveals that a Freeport doctor told him that the foreign substance had not been removed from his eye, directly contradicting UC Hospitals' evaluation; Montgomery had ample time to file suit prior to the running of the limitations period at the point he was informed in Freeport (September 1985) that the surgery to remove the foreign substance had failed.

### C. Paragraph 13–212(c)

 The limitations period in paragraph 13–212(a) is tolled "[i]f the person entitled to bring an action described in this Section is, at the time the cause of action accrued, ... (ii) imprisoned on a criminal charge...." Ill.Ann.Stat. ch. 110, para. 13–212(c). Montgomery argues that because he went to prison approximately seven months after the University of Chicago surgery, paragraph 13–212(c) tolls the limitations period.

That paragraph will not toll the limitations period, however, where Montgomery was not incarcerated at the time of the alleged malpractice. *Hamil v. Vidal*, 140 Ill.App.3d 201, 204, 94 Ill.Dec. 777, 779, 488 N.E.2d 1024, 1026 (5th Dist.1985); *see also Scott v. Archer–Daniels–Midland Co.*, 194 Ill.App.3d 510, 514, 141 Ill.Dec. 589, 591, 551 N.E.2d 776, 778 (5th Dist.1990) (explaining *Hamil*). The exception to the limitations period applies only to imprisonment coterminous with the date of the incident giving rise to the cause of action; there is no "additional exception" that applies to "subsequent periods of incarceration." *Hamil*, 140 Ill.App.3d at 203–04, 94 Ill.Dec. at 779, 488 N.E.2d at 1026. There was no reason why Montgomery could not have filed suit prior to his incarceration, and this dooms his paragraph 13–212(c) argument against summary judgment.

### IV.    Conclusion

Summary judgment in favor of defendants is appropriate since Montgomery did not file his suit within the limitations or repose periods provided by Illinois law, specifically Ill.Ann.Stat. ch. 110, para. 13–212(a). Exceptions or limitations posited where there is "fraudulent concealment" or where plaintiff is incarcerated do not apply to Montgomery. Further, defendants are not equitably estopped from employing their limitations/repose argument. With dismissal under Federal Rule of Civil Procedure 4(j) of Robert Del Pero, see note 1, *supra*, this case is closed. It is so ordered.