JOSE AZNEL, Plaintiff-Appellant, v. DIEGO GASSO *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 85—3068

Opinion filed March 25, 1987.

Loggans & Reiter, and David A. Novoselsky and Kathleen M. Krist, both of David A. Novoselsky & Associates, both of Chicago, for appellant.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers, of counsel), for appellees.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Jose Aznel, brought this medical negligence action against Dr. Diego Gasso and St. Mary of Nazareth Hospital. The complaint alleges that Dr. Gasso's failure to perform the proper surgery in a timely manner compelled plaintiff to undergo multiple operations, caused permanent damage to his abdominal wall, and caused him to develop multiple hernias. Defendants moved for summary judgment on the ground that the action was not timely filed. The trial court granted the motions, and plaintiff appeals. St. Mary's Hospital has been dismissed from the appeal.

The motions for summary judgment were supported by excerpts from the deposition testimony of plaintiff. The record also contains the deposition testimony of Dr. Gasso and of Dr. Anthony N. Silvetti, plaintiff's family physician.

Plaintiff was initially injured while employed as a laborer in February 1971. On March 20, 1971, he complained of severe low abdominal pain. On that date, Dr. Silvetti had him admitted to the hospital, at which time plaintiff commenced a course of treatment with Dr. Gasso that continued until December 1973. The course of treatment included multiple operations. On March 17, 1971, Gasso performed an exploratory laparotomy, removed plaintiff's gallbladder, and repaired two hernias. On March 22, 1971, Dr. Gasso performed a colostomy. On April 20, 1971, plaintiff was discharged from the hospital. He was readmitted on May 20, 1971, and he underwent further surgery on May 28, 1971, when Dr. Gasso removed a perforated portion of plaintiff's bowel. Plaintiff was discharged on June 8, 1971. On July 11, 1971, plaintiff was readmitted, and, on July 14, 1971, he was operated on by Dr. Gasso for closure of the colostomy and repair of a ventral hernia. Plaintiff was discharged from the hospital on July 24, 1971. Plaintiff was rehospitalized in January 1972 and underwent surgery for repair of two hernias.

On April 20, 1973, Dr. Gasso told plaintiff that he had so many abdominal hernias that they were no longer operable. One of plaintiff's wounds has remained open since 1973.

In December 1973, Dr. Gasso moved his practice to Florida, and he referred plaintiff back to Dr. Silvetti for continuing outpatient treatment. Since that time, plaintiff has seen Dr. Silvetti up to 20 times annually. In 1977, Dr. Silvetti and plaintiff discussed plaintiff's abdominal hernias and their relation to the series of operations performed by

Dr. Gasso in 1971 and 1972.

In September 1979, Dr. Teresi treated plaintiff for the hernia condition at Martha Washington Hospital. Plaintiff was discharged from the hospital on January 14, 1980.

Although he had previously contemplated suing Dr. Gasso, plaintiff first consulted an attorney in March or April 1983 and was advised that he had no legal recourse because he had waited too long to file suit. On January 18, 1984, plaintiff flew to Florida and was examined by Dr. Gasso for the first time in more than 10 years. Plaintiff indicated that he wanted to obtain Dr. Gasso's opinion as to how to cure the condition. Dr. Gasso advised plaintiff to undergo further surgery. The doctor felt surgery was feasible in 1984 even though in 1973 he believed that the hernias were inoperable. There were new materials available for repairing hernias in 1984. In addition, Dr. Gasso prescribed cough medicine to alleviate the abdominal pain produced when plaintiff coughed. Plaintiff returned to Chicago on the same day.

On May 11, 1984, plaintiff filed this medical malpractice action against defendants. He alleged in the complaint that his injuries emerged in December 1983 and that he did not discover, and should not have discovered, his injuries until that time.

■ The issue is whether plaintiff's complaint was timely filed. Plaintiff invokes the continuous-care exception to the statute of limitations and contends that the action was timely because the complaint was filed less than five months after January 18, 1984, the last date plaintiff was treated by Dr. Gasso. Dr. Gasso counters that the action was not timely because the last date plaintiff was treated by him, January 18, 1984, was not part of a continuous course of treatment of plaintiff. Dr. Gasso maintains that the cutoff date for filing the complaint was September 19, 1980, four years following the September 19, 1976, effective date of the statutory amendment to the medical malpractice statute of limitations. We agree with Dr. Gasso and hold that plaintiff's cause of action was barred because it was not filed on or before September 19, 1980.

The medical malpractice statute of limitations, section 13—212 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—212), originally was enacted as section 21.1 of the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, par. 22.1), which took effect on September 19, 1976. Section 13—212 provides that a medical malpractice action shall not be commenced more than two years after the plaintiff knew or should have known of his injury but in no event more than four years after the date of the alleged misconduct:

"No action for damages for injury or death against any physi-

cian *** shall be brought more than two years after the date on which the claimant knew, or through the use of reasonable diligence should have known *** of the existence of the injury *** but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission ***." (Ill. Rev. Stat. 1985, ch. 110, par. 13—212.)

The statutory amendment that went into effect on September 19, 1976, shortened the period of repose to four years, thereby placing a four-year absolute outside limit on the application of the two-year discovery rule.

In *Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 490 N.E.2d 655, the court ruled that a medical malpractice action which is predicated upon acts which predate the September 19, 1976, effective date of the statutory amendment, but which is commenced more than four years following the effective date, is time barred. See also *Clark v. St. John's Hospital* (1984), 128 Ill. App. 3d 989, 471 N.E.2d 912; *Roberson v. Taylor* (1983), 115 Ill. App. 3d 587, 451 N.E.2d 16.

Under this analysis, the alleged malpractice here occurred prior to the September 19, 1976, effective date of the statutory amendment. Plaintiff was therefore required to commence his action on or before September 19, 1980. His failure to file a complaint until May 11, 1984, violated section 13—212 and the case law construing it.

Our supreme court recently suggested that the rule might be relaxed if plaintiff contends that there was a course of continuing care or treatment. (See *Ferguson v. Riverside Medical Center* (1985), 111 Ill. 2d 436, 490 N.E.2d 1252.) Plaintiff advances the argument that the consultation of January 18, 1984, was a part of a continuing treatment of plaintiff by Dr. Gasso and that the consultation served to toll the statute of limitations. We disagree.

■ Merely intermittent or occasional medical services at substantial intervals are insufficient to satisfy the continuing-treatment doctrine and therefore do not operate to toll the statute of limitations. (*Holdridge v. Heyer-Schulte Corp.* (N.D.N.Y. 1977), 440 F. Supp. 1088; *Kossick v. United States* (2d Cir. 1964), 330 F.2d 933, *cert. denied* (1964), 379 U.S. 837, 13 L. Ed. 2d 44, 85 S. Ct. 73.) The reason for this is that application of the doctrine presupposes the continued existence of the personal, confidential physician-patient relationship. (*Ciccarone v. United States* (3rd Cir. 1973), 486 F.2d 253.) Furthermore, plaintiff must allege negligent treatment following the original treatment; continuing negligence, not merely continuing treatment, is needed in order to satisfy the doctrine. *Nutty v. Universal Engineering Corp.* (S.D. Ill. 1983), 564 F. Supp. 1459.

■ In the present case, Dr. Gasso's continuous treatment of plaintiff was from March 1971 through December 1973. That treatment of plaintiff ceased in December 1973 when Dr. Gasso moved to Florida and referred plaintiff back to Dr. Silvetti. The physician-patient relationship between the parties terminated at that time. Following an interval of over a decade during which plaintiff received treatment from Dr. Silvetti and Dr. Teresi, plaintiff sought out Dr. Gasso in Florida and underwent a single examination. As a matter of law, the January 18, 1984, consultation or examination or treatment was merely an isolated service that followed a substantial interval. The statute of limitations would become meaningless in medical malpractice actions if the limitations period could be circumvented by an isolated, final office visit. It was not alleged, nor can it reasonably be inferred, that there was negligence in connection with the January 18, 1984, visit. For all of those reasons, that visit does not qualify under the continuous-treatment doctrine. Because the single consultation or examination that occurred more than a decade after the regular course of treatment by Dr. Gasso had terminated cannot reasonably be construed as an ongoing or continuing tort, the cases cited by plaintiff are factually inapposite.

■ Plaintiff also contends that he should be permitted to amend his complaint in order to comply with the requirement in *Nutty v. Universal Engineering Corp.* that a plaintiff who invokes the continuous-treatment doctrine must plead negligent treatment that followed the original malpractice. Plaintiff's proposed amendment would allege that Dr. Gasso was negligent on January 18, 1984. However, plaintiff's admission that he has known of his condition of multiple abdominal hernias since 1973, his testimony that one of his wounds has been open since 1973, Dr. Silvetti's testimony that plaintiff knew in 1977 that his condition was related to the series of surgeries performed by Dr. Gasso, plaintiff's admission that he had contemplated filing a suit for some time, plaintiff's allegation in his complaint that his injuries emerged in December 1983, and plaintiff's testimony that he went to Florida in January 1984 merely to obtain Dr. Gasso's opinion, all belie plaintiff's contention that he could legitimately allege any malpractice in connection with the January 18, 1984, visit. Therefore, plaintiff is not entitled to amend his complaint to allege a matter that in effect contravenes sworn testimony in the record.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

WHITE and FREEMAN, JJ., concur.