TIMOTHY C. DALY, Plaintiff-Appellant, v. BRUCE N. CARMEAN, Defendant-Appellee.

Fourth District    No. 4—90—0481

Opinion filed March 7, 1991.—Rehearing denied April 12, 1991.

Phebus, Tummelson, Bryan & Knox, of Urbana (Joseph W. Phebus, of counsel), for appellant.

Karen L. Kendall, of Heyl, Royster, Voelker & Allen, of Peoria, and Adrian E. Harless and Guy A. Studach, both of Heyl, Royster, Voelker & Allen, of Springfield, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On July 23, 1986, plaintiff Timothy C. Daly filed a two-count complaint in the circuit court of Macon County against defendant Bruce N. Carmean, a podiatrist, charging defendant with medical malpractice and seeking compensatory damages. Count I of the complaint alleged specific acts of negligence by defendant in diagnosing and treating plaintiff for a foot condition. Count II invoked application of the doctrine of *res ipsa loquitur* by making a general allegation of negligence by defendant. The case was tried by jury. At the close of the plaintiff's evidence, upon defendant's motion, the court directed a verdict for defendant as to count II (*res ipsa*). The jury ultimately found for defendant as to count I and judgment was entered on that verdict on April 27, 1990. Plaintiff has appealed. We affirm the judgment entered as to count II but reverse the judgment as to count I. We remand for a new trial.

Plaintiff maintains the circuit court erred (1) in directing a verdict for defendant on the *res ipsa loquitur* count; (2) in improperly instructing the jury on the "continuing course of treatment rule," which determined whether the cause was timely filed; (3) in refusing various instructions tendered by plaintiff; (4) in denying plaintiff leave to reopen its case, and denying plaintiff leave to amend the complaint to allege defendant was estopped from maintaining the action was time barred; (5) in refusing to strike testimony of defendant's expert; and (6) in not granting plaintiff relief because defendant communicated with plaintiff in open court before the jury. Our partial affirmance and partial reversal is based upon our determination that the directed verdict on the *res ipsa* count was proper and the instruction on the "continuing course of treatment rule" created reversible error.

The evidence of the underlying circumstances of the case was not in dispute. Defendant had been practicing podiatry in Decatur for 31 years at time of trial. A podiatrist is a person licensed to diagnose

and give "medical, physical or surgical treatment of the ailments of the human foot" within limitations. (Ill. Rev. Stat. 1981, ch. 111, par. 4908.) On July 17, 1981, defendant began treating plaintiff for pain in his right first metatarsal (big toe). At that time, plaintiff was a 40-year-old male, 6 feet 6 inches, weighing 245 pounds, who was an avid runner and athlete. Defendant X rayed and examined plaintiff's feet and found a bunion on his right big toe and a hammertoe of the second metatarsal of both feet. A "bunion" is a swelling of a joint at the base of the big toe which forces the bones in an outward direction. A "hammertoe" is a toe in a permanently flexed position, resulting in a claw-like appearance. Defendant diagnosed plaintiff's condition as resulting from a condition of his feet called "pronation," by which plaintiff's arches rotated inward, causing a flattening of the feet.

After completing the foregoing examination and diagnosis, defendant performed a "silver bunionectomy" on plaintiff's right foot by shaving the medial side of his big toe in an attempt to reduce the bulge in the medial side of that foot. Defendant then told plaintiff to wear surgical shoes and to temporarily restrict his walking. On October 21, 1981, defendant prescribed inlays for plaintiff's shoes in an attempt to correct plaintiff's pronation. Plaintiff's complaint of pain in his right big toe continued and, on March 1, 1982, defendant performed a McBride bunionectomy, a modified Wilson oblique osteotomy on the first toe of plaintiff's right foot, and a "V" osteotomy on the second toe of plaintiff's right foot. Soon plaintiff began complaining of pain in the second toe of his left foot and defendant then performed three operations on plaintiff's left foot which involved the same procedures earlier applied to plaintiff's right foot. That left foot was then tightly wrapped and placed in a plaster cast.

Plaintiff complained of further pain and, on October 29, 1982, defendant performed "V" osteotomies on the third toe of both feet. On November 18, 1983, defendant performed osteotomies on the fourth toe of both feet and, also, performed joint resections to correct plaintiff's hammertoe condition, and a neuronectomy between the third and fourth toes of both feet. As plaintiff continued to suffer pain, defendant injected plaintiff's right big toe with a substance called Kenalog on January 7, 1984, and on August 29, 1984. The latter injection was made during plaintiff's last visit to defendant. According to defendant, plaintiff's only complaint at that time concerned a small amount of inflammation in his right big toe, and defendant told plaintiff he could continue jogging.

Plaintiff testified that because his pain was intensifying and his ability to function normally was seriously impaired, he independently

sought and underwent a gait analysis at Southern Illinois University on September 28, 1984. Plaintiff testified that the gait analysis revealed that his gait was irregular.

On February 5, 1986, plaintiff entered the care of Dr. Robert Palmer, an orthopedic surgeon in Indianapolis who specialized in foot surgery. Dr. Palmer testified that plaintiff had a preexisting condition called Morton's syndrome. Morton's syndrome is an anatomical deformity whereby the big toe is naturally short. Dr. Palmer testified that he performed an oblique osteotomy at the base of the second and third toes of plaintiff's right and left foot. Dr. Palmer testified that the reason for the surgeries was that the shortening of the big toe by defendant had resulted in these two toes being relatively too long and thus bearing an excessive amount of weight. On June 23, 1987, Dr. Palmer performed a resection arthroplasty distal end of the second toe and removed the lateral sesamoid on the plaintiff's right foot. Dr. Palmer testified that on October 25, 1988, he removed a bone spur on the distal head of plaintiff's second toe on the right foot.

Dr. James H. Lawton, a podiatrist, testified on behalf of plaintiff, giving expert opinion testimony after examining plaintiff and reviewing defendant's records, including the X rays taken July 17, 1981, and deposition testimony of plaintiff, his wife, defendant, Dr. Palmer, and Dr. Mose Galluzzo (who later testified as an expert for defendant). Dr. Lawton stated the X rays indicated plaintiff had a mild bunion deformity on both feet with a shift of the sesamoids under each big toe. A sesamoid is a small bony mass imbedded in tendons. Lawton testified defendant should have examined plaintiff's legs, knees, ankles, and overall structure of the feet before starting treatment and defendant's notes did not indicate this was done. He also stated the silver bunionectomy performed was not the proper procedure to use because it does not correct a condition like plaintiff's where the big toe joint is out of alignment and a shift of sesamoids exists. Lawton stated the proper treatment would have been of a conservative nature which would have included use of foot-supporting shoes for a period of six months to one year.

Dr. Lawton testified that the modified Wilson oblique osteotomy performed on March 1, 1982, also fell below the standard of care due to the fact that plaintiff's big toe was naturally short (a condition known as Morton's syndrome). The modified Wilson oblique osteotomy by its very nature is a procedure which shortens bone. Dr. Lawton testified that the literature is replete with examples of complications resulting from the performance of the procedure in this context. He noted successive shortening of the toes leads to excessive mechan-

ical stress which is a condition known as metatarsalgia. Additionally, Dr. Lawton testified, the standard of care was violated when defendant failed to immobilize the affected portions of plaintiff's feet following the surgical procedures.

Dr. Lawton stated that, as a result of defendant's improper care, plaintiff experienced a condition called "chasing the metatarsals." Dr. Lawton stated that if you fracture one toe as in an osteotomy, that bone elevates, and the stress goes to the next toe. Sometime later the stress directly escalates the next toe. Basically, you have to continue to fracture the following toes in order to achieve proper weight distribution.

Dr. Lawton gave an opinion that defendant's failure to use fixation after the Wilson osteotomy of the big toe caused transfer lesions under the remaining toes. Transfer lesions are calluses formed under the toes due to the shifting of weight. Dr. Lawton testified that the transfer lesions necessitated the need for further surgeries. Dr. Lawton stated that in his opinion transfer lesions would not have occurred had defendant performed the proper initial procedure, a modified McBride bunionectomy.

Dr. Galluzzo testified for defendant, stating (1) he was a licensed podiatrist who had been practicing in Rockford since 1955, and (2) in his opinion defendant's selection of treatment for plaintiff was within the standard of care of a reasonably well-qualified podiatrist.

■■ We consider first the propriety of the directed verdict as to count II. Translated literally, the Latin phrase *res ipsa loquitur* means "the thing speaks for itself." The doctrine is a method of proving negligence by circumstantial evidence when the knowledge of whether negligence occurred is much more available to the opponent than the proponent. (See W. Keeton, Prosser and Keeton on Torts §39, at 242-43 (5th ed. 1984).) In order for a plaintiff, in a tort action, to invoke the doctrine, that plaintiff must establish he was injured: (1) in an occurrence that ordinarily does not happen in the absence of negligence, and (2) by an agency or instrumentality within the defendant's exclusive control. (*Gatlin v. Ruder* (1990), 137 Ill. 2d 284, 295, 560 N.E.2d 586, 590-91.) Prior to the adoption of comparative negligence (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886), the doctrine also required proof the injury was not due to any voluntary act or neglect by the plaintiff. However, such a requirement is inconsistent with the theory of comparative negligence. *Gatlin*, 137 Ill. 2d 284, 560 N.E.2d 586.

■■ In proving the elements of *res ipsa loquitur* in medical malpractice cases, the plaintiff may rely upon the testimony of lay wit-

nesses as to matters of common knowledge or upon that of experts. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1113; *Gatlin,* 137 Ill. 2d 284, 560 N.E.2d 586.) Here, plaintiff relied upon the following testimony of Dr. Lawton given at various stages of his direct examination:

"Q. And in your opinion with a reasonable degree of medical certainty, if Dr. Carmean had possessed and applied the skill and care of a reasonably well qualified podiatrist during his treatment of Mr. Daly in 1981 and 1982, would this—would the osteotomies on the second, third, and fourth [toes] have been required?

A. No, sir.

* * *

Q. And the osteotomies on the second, third, and fourth [toes] of Mr. Daly's feet in your opinion, with a reasonable degree of medical certainty, would these more probably than not have been required or necessary had Dr. Carmean possessed and applied the skill of a reasonably well qualified podiatrist in treating the bunions on Mr. Daly's first [toes] in 1981 and 1982?

A. They shouldn't have been necessary at all if the correct procedure had been applied in the initial surgical episode.

* * *

Q. And the—as to the—do you have an opinion with a reasonable degree of medical certainty based upon your investigation, examination and treatment and discussion as to what Mr. Daly's situation would be today if he had been treated with the applicable standard of care *as you have discussed yesterday* by Dr. Carmean in 1981? ***

A. I think following normal criteria and procedures that should have been performed, that at the present time, Mr. Daly would be functioning normally." (Emphasis added.)

■■ The testimony showed sufficient evidence of control by defendant of plaintiff's treatment to establish the control requirement for *res ipsa loquitur.* (*Coffey v. Brodsky* (1987), 165 Ill. App. 3d 14, 518 N.E.2d 638.) However, as we have stated, the phrase means "the thing speaks for itself." The "thing" was plaintiff's condition at the conclusion of his treatment by defendant. Dr. Lawton's answers did not indicate his opinion that he could conclude from plaintiff's condition alone that, more likely than not, the treatment had been negligently selected. Rather, in the context of Dr. Lawton's testimony, his answers relied upon to invoke *res ipsa* indicate his opinion was

formed on the basis of his knowledge of the treatment that was actually performed.

Plaintiff's alternate reliance upon specific acts of negligence, as set forth in count I, does not, of itself, preclude him from proving his case through use of *res ipsa loquitur*. In *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 415 N.E.2d 397, a plaintiff sought to invoke *res ipsa loquitur* together with proof of specific acts of negligence to recover against health providers for injuries occurring during surgery. The evidence was uncertain as to what had actually occurred. In upholding the appellate court's reversal of a summary judgment for a defendant hospital, the court held *res ipsa* could be used to create a factual question as to the negligence of the hospital. Nonetheless, the court cautioned that *res ipsa* could not have been applied "if the evidence introduced by plaintiff conclusively established the exact cause of his injuries." *Kolakowski*, 83 Ill. 2d at 397, 415 N.E.2d at 401.

Here, the evidence was undisputed as to the procedures which had been performed. We are unaware of a medical malpractice case where liability depended upon the selection of treatment, no dispute existed as to the treatment actually performed and *res ipsa* was held to apply. To permit use of *res ipsa* here would be closely analogous to the use prohibited by the explanation in *Kolakowski* and would permit its use in the vast majority of cases where the propriety of the selection of medical treatment was the issue. Under the circumstances of this case, the circuit court properly determined *res ipsa* had not been brought into play. The court correctly directed a verdict in favor of defendant as to count II.

██ The dispute over the "continuing course of treatment" rule arose from the court's ruling on tendered issues instructions as they concerned the question of whether plaintiff's complaint was timely filed. At times pertinent, section 13—212 of the Code of Civil Procedure (Code) provided that, absent fraudulent concealment, malpractice actions brought by a patient against a physician must be brought within "2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death" involved "whichever of such date occurs first," and within "4 years after" the "act or omission or occurrence" stated to be the cause of "the injury or death" involved. (Ill. Rev. Stat. 1985, ch. 110, par. 13—212.) As we have stated, plaintiff's complaint was filed on July 23, 1986. The last treatment given by defendant to plaintiff was on August 29, 1984, which was within the two-year period. Much of the sur-

gery was performed before July 23, 1982, on which date a four-year statutory period of repose began.

After tender by defendant and over objection of plaintiff, the court submitted to the jury an instruction which told the jury that an issue was raised as to the timeliness of plaintiff's filing of his complaint, and that plaintiff maintained it was timely filed because "defendant's *negligent course of* treatment continued to" a time "to within two years" of the filing of the complaint. (Emphasis added.) This instruction recognized that continued treatment by a physician for the same condition may extend the date upon which the limitation period for bringing an action for negligent treatment may begin. The instruction required that the continuing treatment must be negligent. Plaintiff maintains the continuing treatment need not be negligent. The issue is crucial here because the record makes little showing of negligence on the part of defendant after July 23, 1984, the date which was two years before the complaint was filed.

In recognizing a rule whereby a course of continuing treatment may toll the triggering date for a statute of limitation for medical malpractice, but only if the continuing treatment is negligent, plaintiff relies upon *Aznel v. Gasso* (1987), 154 Ill. App. 3d 785, 507 N.E.2d 83. There, a defendant surgeon had performed a series of abdominal operations upon a plaintiff prior to December 1973 when the defendant surgeon left Chicago and went to Florida to continue his practice. The plaintiff was then treated by other doctors and then consulted an attorney in the spring of 1983 about suing the defendant surgeon for malpractice. That plaintiff then arranged for an examination by the defendant surgeon and flew to Florida and was examined. He then filed suit and suffered the entry of a summary judgment against him because of the two-year limitation period involved here. Ill. Rev. Stat. 1985, ch. 110, par. 13—212.

On appeal, the *Aznel* court affirmed. That court noted that in *Ferguson v. Riverside Medical Center* (1985), 111 Ill. 2d 436, 490 N.E.2d 1252, the supreme court had suggested a course of continuing care or treatment by a physician might toll the triggering of the statute of limitations. The *Aznel* court then concluded that the course of treatment there had not been continuous and that to permit a tolling of the limitation period under those circumstances would make the statute of limitations almost meaningless. The court also stated that "continuing negligence, not merely continuing treatment, is needed in order to satisfy the doctrine." *Aznel*, 154 Ill. App. 3d at 788, 507 N.E.2d at 86, citing *Nutty v. Universal Engineering Corp.* (S.D. Ill.

1983), 564 F. Supp. 1459 (a decision based on a determination as to Missouri law).

In *Neaterour v. Holt* (1989), 188 Ill. App. 3d 741, 544 N.E.2d 846, this court affirmed a summary judgment for a defendant in a malpractice case because of the operation of the four-year repose provision of section 13—212 of the Code. In the process of reaching a decision, this court reasoned that the statute of repose would have been triggered only on the last day of treatment had not that plaintiff discovered earlier that her treatment had been negligent. This court did not directly state that the continued treatment did not have to be negligent. However, this court mentioned that "[i]n *Jacobson v. Natonson* (1987), 164 Ill. App. 3d 126, 517 N.E.2d 304, the court noted that the doctrine [of continuing course of treatment] traditionally operates to toll the four-year repose period *** during a continuous course of treatment *for a specific condition,* and would commence running on the day of the last treatment." (Emphasis added.) (*Neaterour,* 188 Ill. App. 3d at 747, 544 N.E.2d at 851.) Had continuing negligence been intended to be required, both *Neaterour* and *Jacobson* would likely have listed that as a condition for invoking the continuing course of treatment rule.

We agree with the implied *dictum* of *Neaterour* that a continuing course of treatment, as here, need not be negligent if it is for the same "specific condition." Clearly, the Florida treatment in *Aznel* was not a continuing part of the prior allegedly negligent treatment given a decade earlier in Illinois. Plaintiff has cited *Metzger v. Kalke* (Wyo. 1985), 709 P.2d 414, and *Comstock v. Collier* (Colo. 1987), 737 P.2d 845, where statutes of limitation have been held to be triggered only upon the end of a continued course of treatment for the same or closely related injuries. The *Metzger* court indicated that the treatment "should be considered as a whole and if malpractice occurred during its course, the statute of limitations begins to run when the treatment terminates." (*Metzger,* 709 P.2d at 417.) In *Comstock,* the court pointed out that a physician, throughout a continuing course of treatment, has "a duty to rectify any mistakes made during the course of treatment." *Comstock,* 737 P.2d at 849.

Despite the lack of clear precedent, we hold that the continuing course of treatment need not continue to be negligent to toll the triggering of either the two-year period of limitation or the four-year period of repose of section 13—212 of the Code. Because the jury could well have found for the defendant on the basis of a belief that plaintiff had failed to negate operation of the two-year period of limitation because defendant's last negligent act occurred more than two years

before the filing of the complaint, we conclude the giving of the issues instruction in question was reversible error requiring a new trial as to count I.

As a new trial must be held, we examine other claims of error made by plaintiff only to the extent that the same issues may arise on retrial.

■■ ■ Plaintiff maintains the court erred in refusing instructions he offered in regard to issues and burden of proof. Neither made reference to the question of whether plaintiff had discovered he had been negligently injured early enough to invoke the discovery aspect of section 13—212 of the Code which cause the limitations and repose time limits to start to run. In order for those time frames to be triggered, the plaintiff must not only know he has been injured by the services performed by the defendant but also know that the injury resulted from the defendant's negligence. (*Skoglund v. Blankenship* (1985), 134 Ill. App. 3d 628, 481 N.E.2d 47.) Defendant contends testimony of plaintiff created a question of fact as to whether plaintiff had knowledge of his injury and its negligent causation at a sufficiently early date to justify the refusal of the instructions.

Defendant relies on testimony by plaintiff in which he stated that by November 19, 1983, when the last surgery by defendant was performed, he assumed pain he suffered was related to the surgeries defendant had performed and was greater than pain he had previously suffered from his feet. Plaintiff explained he then felt the pain was increasing with each surgery while "[e]very surgery was supposed to be eliminating the pain." The foregoing testimony comes very close to raising the factual issue claimed by defendant but we do not deem it quite strong enough to do so. The inference plaintiff knew the surgery was not a success is strong but slightly more is required to permit an inference that he knew the wrong treatment had been prescribed. Because of the closeness of the question, the court must rule carefully on retrial.

Plaintiff also asserts the court erred in refusing the following instruction, which is not included in Illinois Pattern Jury Instructions, Civil (3d ed. 1990) (IPI Civil 3d):

"If a health care provider is guilty of professional negligence which creates a condition of the plaintiff's body, then the health care provider is liable not only for plaintiff's damages resulting from that condition, but also liable for any damages sustained by the plaintiff arising from the efforts of subsequent health care providers to treat the condition caused by the initial health care provider."

In support of this instruction, plaintiff cites *Gertz v. Campbell* (1973), 55 Ill. 2d 84, 302 N.E.2d 40. In *Gertz,* the defendant automobile driver filed a third-party complaint against a physician, whom he alleged had negligently treated that plaintiff after an automobile accident. The third-party complaint sought indemnity for any damages which might be assessed against defendant under plaintiff's complaint which were attributable to the malpractice of the physician. The trial court dismissed the third-party complaint and the appellate court reversed. The supreme court affirmed the appellate court. The supreme court ruled that the defendant, third-party complainant, was liable for any aggravation of injuries suffered by that plaintiff. Moreover, that plaintiff was permitted to recover from defendant for the original injuries as well as for any aggravation attributable to the attending physician's subsequent negligence. Therefore, the court held that the third-party complainant had a right to bring the action against the physician to be indemnified for the damages to the plaintiff attributable to the malpractice.

*Gertz* did not involve an issue of jury instruction; it only addressed the question of whether the third-party complaint stated a cause of action and whether that defendant was liable for the injuries that plaintiff received in treatment. Defendant maintains that no case since *Gertz,* which was decided in 1973, has approved a jury instruction based specifically upon that decision.

Furthermore, defendant claims that plaintiff's tendered instructions were both argumentative and already covered by IPI Civil 3d No. 12.04 and, therefore, the court properly refused plaintiff's non-IPI. Defendant claims that the following instruction should have been tendered by plaintiff:

> "More than one person may be to blame for causing an injury. If you decide that the defendant was negligent and that his negligence was a proximate cause of injury to the plaintiff, it is not a defense that some third person who is not a party to the suit may also have been to blame." IPI Civil 3d No. 12.04.

■ ■ The instruction tendered by plaintiff, based on *Gertz,* concerns the liability of a tortfeasor for injury resulting from the negligence of one who supplies medical treatment to the victim of the original tort for the injuries resulting from the original tort. IPI Civil 3d No. 12.04 concerns proximate cause when more than one tortfeasor is involved but does not explain the special rule involved in *Gertz.* Where, as here, no IPI instruction accurately states the rule of *Gertz,* a non-IPI instruction is permissible under Supreme Court Rule 239(a) (134 Ill. 2d R. 239(a)) if it is simple, brief, impartial, and nonargumen-

tative. (*Fravel v. Morenz* (1986), 151 Ill. App. 3d 42, 502 N.E.2d 480.) The tendered instruction accurately stated the law and met the requirements of *Fravel*. We do not agree with *Lay v. Knapp* (1981), 93 Ill. App. 3d 855, 417 N.E.2d 1099, that such a non-IPI instruction must amplify or clarify an IPI instruction. Giving the instruction here would have been proper but the court did not breach its discretion in refusing the instruction.

▮ Plaintiff tendered Illinois Pattern Jury Instructions, Civil, No. 105.01 (2d ed. 1971) (IPI Civil 2d), which sets forth the general duty of a doctor and describes conduct which constitutes malpractice. This instruction was given. Plaintiff tendered IPI Civil 2d No. 105.02, concerning the duty required of a medical specialist, and that was refused. Defendant contends that the latter instruction was redundant. Plaintiff maintains that IPI Civil 2d No. 105.01 was tendered only after IPI Civil 2d No. 105.02 was refused. The record is not entirely clear in that respect, but we need not decide this dispute. Both instructions need not be given but either one, by itself, is permissible.

▮ Plaintiff tendered both IPI Civil 3d No. 10.01 (modified) and IPI Civil 2d No. 105.01, which we discussed in the last paragraph. Plaintiff's tendered IPI Civil 3d No. 10.01 as modified stated:

> "When I use the word 'negligence' in these instructions, I mean the failure to do something which a reasonably careful person would do, or the doing of something which a reasonably careful person would not do, under circumstances similar to those shown by the evidence." IPI Civil 3d No. 10.01 (modified).

Plaintiff maintains the court erred in refusing the instruction. The giving of this instruction in addition to those defining the duty of a physician has been held not to be error. (*Thiele v. Ortiz* (1988), 165 Ill. App. 3d 983, 520 N.E.2d 881; *Northern Trust Co. v. Louis A. Weiss Memorial Hospital* (1986), 143 Ill. App. 3d 479, 493 N.E.2d 6.) However, the instructions defining the duty of a doctor or a specialist and describing malpractice (IPI Civil 2d Nos. 105.01, 105.02) give sufficient explanation of the care required of a medical provider, and a general description of negligence is unnecessary. The court was not required to give the instruction in question.

The trial court refused to allow plaintiff to reopen his case and to amend his complaint to allege estoppel after the court's rulings on instructions indicated the question that his complaint was untimely was before the jury. We need not decide whether this was error, as plaintiff will have an opportunity to amend upon remand and can introduce pertinent evidence at retrial.

Dr. Galluzzo, defendant's expert, testified on cross-examination that his opinion was based, in part, upon operation reports of defendant not prepared until May or June 1988. However, all of the significant matters set forth therein were established by proper evidence. No error resulted from the trial court's refusal to strike his testimony.

As we have stated, we affirm the judgment on the directed verdict for defendant as to count II. We reverse the judgment on the jury verdict as to count I and remand for a new trial.

Affirmed in part; reversed in part and remanded.

SPITZ and KNECHT, JJ., concur.