CATHERINE L. HAUK *et al.*, Plaintiffs-Appellants, v. JESSE REYES, Defendant-Appellee.

Third District   Nos. 3—91—0771, 3—92—0038

Opinion filed July 13, 1993.

Raymond C. Rose (argued), of Kanoski, Rose & Associates, of Peoria, and Duane K. Bayer, of Kanoski & Associates, of Rushville, for appellants.

Burrel Barash (argued), of Barash, Stoerzbach & Henson, of Galesburg, for appellee.

JUSTICE BARRY delivered the opinion of the court:
Plaintiffs Catherine L. Hauk and Jeffrey Hauk appeal from summary judgment entered in favor of defendant Jesse Reyes in a medical malpractice action based on defendant's alleged failure to diagnose correctly the fracture of Catherine's spine which resulted in her permanent quadriplegia. The trial court ruled that plaintiffs' action against defendant is barred by the medical malpractice statute of limitations.

On appeal, plaintiffs contend that the trial court erred in refusing to apply the five-year limitation for fraudulent concealment of the cause of action. We agree with plaintiffs.

On the morning of November 28, 1984, Catherine Hauk was seriously injured in an automobile accident and was taken by ambulance to the emergency room at Graham Hospital in Canton, Illinois, where she was received at 9:20 a.m. Plaintiff complained of severe lower back pain and pain in the right hip region. X rays of plaintiff's chest,

pelvis, and lumbosacral spine were ordered by Dr. John Day, plaintiff's attending physician. The X rays were taken by Connie Schleich, radiology administrator and chief technologist at Graham Hospital, and were interpreted by Dr. Reyes.

The initial diagnosis given to Dr. Day and Dr. Harendra Gupta, the consulting orthopedist, was that the patient had a stable compression fracture of her spine (vertebra T-11) and had nondisplaced fractures of four ribs. Based on that information, Dr. Gupta recommended bed rest with a gradual increase in activity. Plaintiff was given pain medication and was not immobilized. In fact, she was allowed bathroom privileges with assistance.

By the morning of November 29, plaintiff had developed numbness in her lower extremities, and her treating physicians consulted a neurologist, who ordered an immediate CT (computerized tomography) scan. The scan showed a comminuted, bursting type fracture of L-1 (first lumbar vertebra), a condition which should be treated by immobilizing the patient and undertaking immediate surgery. Plaintiff was transferred to Peoria for the surgery, which was not successful, and she became a quadriplegic.

Plaintiffs consulted an attorney, and Catherine's medical records were obtained from Graham Hospital in October of 1986. In her file was found Dr. Reyes' report interpreting the X rays, which stated in part:

> "The body of L 1 is not well visualized on the lateral view, but on the AP projection, there is evidence of fracture of the right transverse process. On the lateral view, there is poor definition of the superior and inferior end plates as well as the anterior portion of the body which suggests the presence of a comminuted depressed bursting type fracture. There is also cortical irregularity at the anterior body of T 11 which is also probably a fracture. CT scan or tomograms suggested for further evaluation."

This typed report was dated November 28, 1984, and was the only X-ray report in plaintiff's permanent file. The outside of Catherine's X-ray folder contained the following handwritten notation:

> "11/28/84 — Attending physician notified about suspected Fx of L1 & CT scan suggested."

The source of this note is unknown.

On the basis of Dr. Reyes' X-ray report, dated November 28, recommending a CT scan and the failure of the attending physicians to order a scan, counsel determined that Drs. Day and Gupta were negligent in their treatment of plaintiff. On November 19, 1986, plaintiffs

filed a medical malpractice action naming Dr. Day and Dr. Gupta as defendants.

Due to a clerical oversight, the supporting affidavit of a medical doctor was not filed with the complaint but was filed late with leave of court after the two-year statute of limitations had expired. Defendants were allowed to take an interlocutory appeal from the court's ruling. On appeal this court first reversed the trial court and then, after the intervening decision of the supreme court in *McCastle v. Sheinkop* (1987), 121 Ill. 2d 188, 520 N.E.2d 293, we withdrew our opinion and instead affirmed. (*Hauk v. Day* (1988), 167 Ill. App. 3d 758, 521 N.E.2d 1243.) Our mandate was not issued until November 5, 1988, after the Illinois Supreme Court denied defendants' petition for leave to appeal, nearly four years after the injury was incurred.

Plaintiff's counsel then scheduled discovery depositions, and in the course of taking the deposition of Connie Schleich, the X-ray technologist who took plaintiff's X rays and discussed them with defendant, learned for the first time on May 15, 1989, that defendant had prepared a report containing his initial interpretation of the X rays as disclosing no serious problem. Schleich stated that defendant did not diagnose a bursting type fracture until after the CT scan on November 29, and that he must have prepared a second version of his X-ray report on November 29, backdated to November 28.

In subsequent depositions, Dr. Day (September 15, 1989) and Dr. Gupta (October 18, 1989) testified that they were not informed by defendant on November 28, 1984, of any suspicion of a comminuted bursting type fracture and that neither doctor saw the final version of defendant's X-ray report before plaintiff's medical file was transported to Peoria with her on November 29. Dr. Day stated that he first saw the report when he prepared a discharge summary on December 9, 1984.

Dr. Reyes' account differed from that of Dr. Day and Dr. Gupta. He said that he sent a handwritten report to the emergency room with his first impression that plaintiff's back injury was not serious, and then told Dr. Gupta on the phone that he had suspicions of a more serious pathology. When another radiologist, Dr. Zaheer, arrived at Graham Hospital about noon, defendant said that he consulted him and together they determined that plaintiff's injury was a serious fracture. Defendant said he called Dr. Gupta to inform him of the revised finding and that he dictated his final report, incorporating the revised diagnosis, about 12:30 p.m. on November 28.

According to Connie Schleich, Dr. Zaheer did not arrive at the hospital until 4 p.m. on that day. Also, Dr. Gupta denied receiving a

call from defendant revising his previous findings and denied that defendant ever suggested a CT scan.

Plaintiffs filed an amended complaint against defendant on November 6, 1989, alleging that he prepared a final X-ray report which he backdated to November 28, and that he destroyed his preliminary handwritten report, thereby fraudulently concealing plaintiffs' cause of action for negligent diagnosis. Defendant's motion to dismiss the amended complaint on grounds that the statute of limitations had expired was denied on the ground that the allegations of fraudulent concealment allow application of a five-year period of limitation regardless of diligence. The trial court noted that, with a motion to dismiss, the allegations of the complaint must be assumed to be true.

Defendant subsequently filed a motion for summary judgment, again on the ground that the statute of limitations had expired. The trial court granted summary judgment in favor of defendant. The court ruled that a question of fact exists as to whether defendant fraudulently concealed plaintiffs' cause of action, but that summary judgment was not precluded thereby because plaintiffs, in the exercise of ordinary diligence, should have discovered the fraudulent concealment of the cause of action much earlier instead of more than four years after the injury. Furthermore, the court ruled that plaintiff did not allege any affirmative acts amounting to fraudulent concealment, but relied instead upon defendant's silence. The court held that the five-year limitation period for fraudulent concealment could not be invoked.

On appeal, the issue is whether plaintiffs are entitled to the five-year period of limitation for an action based on fraudulent concealment under the circumstances of this case.

■ Looking first at the statutory provisions involved, section 13—212 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 13—212) provides that a medical malpractice action must be brought no more than two years after the claimant knew or through the use of reasonable diligence should have known of the injury, but in no event more than four years after the date of the act, omission, or occurrence alleged to have been the cause of injury.

The statute of limitations for fraudulent concealment in section 13—215 of the Code is an exception to the general limitation period and provides:

> "If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that

he or she has such cause of action, and not afterwards." Ill. Rev. Stat. 1991, ch. 110, par. 13—215.

■ In determining when a plaintiff should reasonably have discovered the possibly wrongful causation of an injury, the courts have distinguished between a sudden traumatic injury and an injury with an insidious onset, with the traumatic event prompting investigation by the injured party and triggering application of the discovery rule. In *Lutes v. Farley* (1983), 113 Ill. App. 3d 113, 446 N.E.2d 866, the stillbirth of a child was held to be such a sudden traumatic event. In an earlier case, *Urchel v. Holy Cross Hospital* (1980), 82 Ill. App. 3d 1050, 403 N.E.2d 545, the plaintiff who sustained injuries in a car-bus collision that resulted in permanent paralysis was held, from the date of the injury, to have constructive knowledge of the possibility that someone was at fault. The court ruled that the plaintiff should have thoroughly investigated the accident and subsequent events to determine what parties might have been at fault. Similarly, in the case before us Catherine's injuries and resulting quadriplegia were sudden and traumatic events which made it incumbent upon plaintiff to investigate the cause of her injuries.

As the record indicates, plaintiffs did obtain Catherine's medical record and consulted an attorney within the two-year period of limitations. The medical record disclosed that a CT scan was recommended on November 28, 1984, but was not performed until November 29. Plaintiffs filed suit within the two-year period against the doctors, Dr. Day and Dr. Gupta, who were apparently negligent in not ordering the CT scan on November 28 as recommended by defendant according to his report in the permanent file. Plaintiffs were obviously reasonably diligent in pursuing a legal remedy up to that point.

Once the complaint was filed, a 19-month lapse of time occurred in trial court proceedings due to the appeal taken by the defendant doctors. During that time plaintiffs did not incur the expense of further discovery while the possible termination of their cause was being weighed upon the scales of appellate justice.

In granting summary judgment, the trial court stated, *inter alia*, in its memorandum of opinion:

"It is, therefore, the conclusion of the Court that despite the fact that there are some issues of material fact that could otherwise be considered by a jury, Section 13—215 is not applicable and trial not available on those issues where the concealment could have been discovered during the initial limitation period or during the period of the discovery period."

After the court's summary judgment order was entered, plaintiffs filed a motion to reconsider supported by their counsel's affidavit outlining his diligence in pretrial discovery. The trial court denied the motion to reconsider and, in a memorandum opinion, stated in part:

"The realities of the practice of law are not unknown to this Court. No implication regarding lack of diligence was intended in any way by reason of the Memorandum granting Summary Judgment.

In denying the Plaintiff's Motion for Reconsideration, I am simply relying on the case law, the effect of which seems to preclude the application of the concealment limitation period in traumatic injury cases absent more than is present on this record. *** I can find no case of traumatic injury onset where interim appeals were involved. Granted, it is the general practice that discovery does not continue while a case is on appeal. However, I can find no case that precludes discovery during the appeal process."

After reviewing the record on appeal, we agree with the trial court that there was no lack of diligence on the part of plaintiffs or their counsel in pursuing discovery in this cause. We do not agree that plaintiffs are nevertheless barred from invoking the fraudulent concealment five-year limitation. It would be unreasonable and unjust to require plaintiffs to incur the expense of continuing pretrial discovery while defendants are attempting to have the cause terminated in the appellate and supreme courts. The fact that this case involves a traumatic injury event does not alter the finding that plaintiffs were reasonably diligent in seeking to discover who was at fault.

Defendant contends that *Urchel v. Holy Cross Hospital* mandates a ruling that the five-year limitation of section 13—215 does not apply. There, plaintiff suffered a traumatic injury in September of 1973 in a car-bus collision, was treated at Holy Cross Hospital and was discharged a quadriplegic, filed suit against the Chicago Transit Authority (CTA) in 1973 which was settled in 1976, and discovered for the first time after settlement that another person injured in the same accident had seen plaintiff sitting up in the emergency room after the accident. Urchel filed suit against Holy Cross Hospital in March of 1977 alleging that defendants aggravated his initial injuries by failing to timely diagnose his injury, failing to immobilize him, and failing to treat his condition upon arrival. The court held that he was subject to the two-year statute of limitations, ruling that he should have thoroughly investigated the circumstances of the accident and subsequent events to determine not only the facts necessary to his suit against

the CTA but also to determine whether any other parties might have been at fault. As to Urchel's claim that the defendants fraudulently concealed their negligence, the court held that the complaint alleged nothing beyond silence on the part of defendants, and this was not sufficient to establish fraudulent concealment.

Our courts have been clear that section 13—215 is applicable only where the concealment of a cause of action consisted of affirmative acts or representations which prevent the discovery of the cause of action. (*E.g., Smith v. Cook County Hospital* (1987), 164 Ill. App. 3d 857, 518 N.E.2d 336.) Therefore, we must consider whether plaintiffs have adequately set forth an affirmative act of fraudulent concealment by their allegations that defendant backdated his final X-ray report to November 28 in order to conceal his failure to diagnose an unstable fracture and his failure to recommend further X rays, thereby intentionally misleading plaintiff into believing that his actions had been appropriate.

In addition to the allegations of the complaint, we note Connie Schleich in her deposition indicates that defendant took affirmative action in preparing a revised version of his initial X-ray interpretation after he learned on November 29 that his initial diagnosis was wrong and that he backdated the revision to November 28.

■ Defendant is thus accused of the affirmative act of preparing a revised version of his initial X-ray interpretation after he learned on November 29 that his initial diagnosis was wrong and backdating the revision to November 28. Certainly such an action would tend to cause plaintiffs to believe that Dr. Day and Dr. Gupta were negligent in not ordering a CT scan on November 28 and would conceal defendant's failure to discover the comminuted, bursting type fracture before the CT scan was taken. In our view, these allegations establish an affirmative act of fraudulent concealment. In spite of plaintiffs' reasonable diligence, as previously discussed, defendant's potential culpability was not discovered until the fifth year after the injury. If the five-year limitation period for fraudulent concealment is ever to be applied, it must be applied here. Otherwise, section 13—215 is meaningless.

Defendant relies on cases which are readily distinguishable from the case before us. In *Urchel v. Holy Cross Hospital* and *Smith v. Cook County Hospital,* silence was held not to be an affirmative act of fraudulent concealment. Here we have not mere silence on the part of defendant but an act which misrepresented his initial diagnosis. In *Greenock v. Rush Presbyterian St. Luke's Medical Center* (1978), 65 Ill. App. 3d 266, 382 N.E.2d 321, the court held that the plaintiff was

not reasonably diligent in failing to obtain hospital records before the two-year wrongful death limitation expired. Here we do have plaintiffs who pursued discovery with reasonable diligence both before and after the interlocutory appeal.

In another case relied upon by defendant, *Cramsey v. Knoblock* (1990), 191 Ill. App. 3d 756, 547 N.E.2d 1358, decedent suffered a head injury in an automobile accident in 1985 and died of a brain tumor in 1986. A wrongful death action was filed in 1986 against the person allegedly at fault in the accident, and in 1988, plaintiffs sought to add as defendants the doctors who treated decedent after the accident and allegedly failed to order a CT scan, thus failing to diagnose and treat the tumor from which she died. Plaintiffs claimed fraudulent concealment in that defendants' medical reports failed to state any connection between the trauma and the tumor which killed her. The court ruled that the five-year limitation of section 13—215 did not apply because plaintiffs did not allege any affirmative acts or representations designed to prevent discovery of the cause of action. The court also noted that plaintiffs had sufficient time to file a complaint within the two-year limitation period, which began to run at the date of death. Unlike the instant case, in *Cramsey* there were no allegations of a deliberate action resulting in a concealment of defendant's fault.

An issue of fact exists here as to whether defendant's final report was intentionally backdated and, if so, whether it constituted fraudulent concealment. Those determinations are ultimately for the trier of fact. We conclude that summary judgment was improvidently granted. This cause is, therefore, reversed and remanded for further proceedings.

Reversed and remanded.

McCUSKEY, P.J., and SLATER, J., concur.