THOMAS M. SERAFIN *et al.*, Plaintiffs-Appellants, v. ALEX R. SEITH *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—95—1135

Opinion filed October 4, 1996.—Rehearing denied October 14, 1996.

579

Esposito, Heuel & Schram, of Chicago (Nicholas F. Esposito, of counsel), for appellants.

Lord, Bissell & Brook, of Chicago (Nick J. DiGiovanni, Diane I. Jennings, Brian T. Garelli, and Stephanie A. Burris, of counsel), for appellees.

JUSTICE COUSINS delivered the opinion of the court:

In 1986, plaintiff Thomas Serafin (Serafin) and defendants William Seith and Alex Seith formed a corporation. Alex Seith was a former partner in the law firm of Lord, Bissell & Brook. Serafin sued Alex Seith and others on August 14, 1991, alleging that Alex Seith acted as Serafin's lawyer when he prepared corporate resolutions in 1991 that permitted dilution of Serafin's 30% stock ownership interest in the corporation. On April 16, 1993, Serafin filed an amended complaint against Lord, Bissell & Brook, seeking to compel statutory disclosure of corporate records and for statutory remedies. The complaint also alleged legal malpractice and negligence, as well as breach of contract for legal services. Lord, Bissell & Brook filed a motion to dismiss, which the trial court granted. Serafin filed a sixth amended complaint asserting that Lord, Bissell & Brook had a duty to advise

him of the majority shareholders' ability to eliminate preemptive rights when the corporation was formed in 1986. Lord, Bissell & Brook filed another motion to dismiss. The trial court granted the motion, finding that Serafin's claims were barred by the six-year statute of repose applicable to actions based on attorney malpractice.

On appeal, Serafin contends that: (1) the trial court erred in finding that his complaint against Lord, Bissell & Brook was time-barred by the statute of repose; (2) the trial court erred in finding that the 1991 act was not the proximate cause of his injury; (3) section 13—214.3 of the Code of Civil Procedure (735 ILCS 5/13—214.3 (West 1992)) is unconstitutional; (4) the trial court erred in not applying equitable estoppel; and (5) the trial court erred in not finding that Alex Seith as a partner with Lord, Bissell & Brook fraudulently concealed the cause of action from Serafin.

BACKGROUND

On October 13, 1986, a preorganization agreement was executed between Thomas Serafin, Alex Seith and Seith's son, William Seith. The preorganization agreement was prepared by Alex Seith, with the assistance of attorneys and/or employees of Lord, Bissell & Brook. The preorganization agreement specified the number of shares that each of the three shareholders would receive once the corporation was incorporated. The number and percentage of stock ownership were as follows: Alex Seith, 510 shares with 51% ownership; William Seith, 190 shares with 19% ownership; and Thomas M. Serafin, 300 shares with 30% ownership. The subscription agreement stated, among other things:

"The subscribers hereto shall take whatever action is appropriate in order to assure that the common stock for which they hereby subscribe is held only by them and by those persons similarly interested in the objectives and operations of the proposed corporation, all in order to insure continuity and harmony in management by persons familiar with the corporation's requirements and devoted to its best interests."

On or about October 17, 1986, Great Lakes Network, Inc., formerly known as Seith-Serafin Communications, Inc. (the corporation), was incorporated. The articles of incorporation were drafted by Alex Seith with the assistance of attorneys and/or employees of Lord, Bissell & Brook. The articles contained the following words which gave the stockholders preemptive rights to acquire unissued shares of stock in order to protect their respective position(s) within the corporation:

"The share holders of the corporation shall have preemptive

rights to acquire unissued shares of the corporation, or securities of the corporation convertible into or carrying a right to subscribe to or acquire shares."

On December 26, 1990, the articles were amended by unanimous consent to provide for 5,000 authorized shares of common stock. The unanimous consent was prepared by Alex Seith with the assistance of attorneys and/or employees of Lord, Bissell & Brook. Also, by unanimous consent, on January 2, 1991, 2,000 shares of stock were issued and all three shareholders were given the benefit of preemptive rights as follows: Alex Seith, 510 original shares and a total of 1,020 shares after new stock issue with 51% ownership; William Seith, 190 original shares and a total of 380 shares after new stock issue with 19% ownership; and Thomas M. Serafin, 300 original shares and a total of 600 shares after new stock issue with 30% ownership.

On April 22, 1991, Susan Gordon, an employee of Lord, Bissell & Brook and secretary to Alex Seith, met with Serafin at a restaurant and showed him two corporate documents that Alex Seith requested that Serafin sign. The first document was a unanimous consent of the directors of the corporation to recommend to the shareholders that the authorized stock be increased from 5,000 to 50,000 shares and that the articles be amended to eliminate the shareholders' preemptive rights:

".RESOLVED: That Article Four Paragraph 2 of the Articles of Incorporation be amended to delete the following sentence: 'The shareholders of the corporation shall have preemptive rights to acquire unissued shares of the corporation, or securities of the corporation convertible into or carrying a right to subscribe to or acquire shares.'

FURTHER RESOLVED: That Article Five of the articles of Incorporation shall be amended to provide that the authorized number of shares of stock be increased from 5,000 to 50,000."

The second document was a unanimous consent of the shareholders of the corporation adopting the above resolution eliminating preemptive rights. Serafin told Susan Gordon that he wanted to talk to Alex Seith before signing the two documents. The same day, Alex Seith had the documents faxed to Serafin's office and telephoned Serafin at his office. Alex Seith told Serafin that the documents would help the company, would help the investors get stock more easily, and would be good for each of the shareholders. On April 22, 1991, Serafin signed both documents.

On April 22, 1991, the corporation's board of directors was comprised of Alex Seith, William Seith, Thomas Serafin, and James L. Fletcher, Esq. On May 10, 1991, the articles were amended to

increase the number of board members to add Carol Seith, wife of William Seith, as a director.

On May 13, 1991, majority shareholders Alex Seith and William Seith voted to remove Serafin as director of the corporation. On May 15, 1991, by unanimous consent of the remaining directors, Alex Seith, Carol Seith and James L. Fletcher, Serafin was removed as president of the corporation.

On May 20, 1991, the board of directors unanimously consented to issue an additional 100,000 shares of stock: Alex Seith received 70,000 shares and William Seith received 30,000 at a price of 20 cents per share. The Seiths executed stock subscription agreements pursuant to the board's action, agreeing that as consideration for the stock, they would forgive part of the outstanding principal on a loan that they had made to Seith-Serafin Communications. On May 28, 1991, by the informal action of majority shareholders Alex Seith and William Seith, the name of the corporation was changed from Seith-Serafin Communications, Inc., to Great Lakes Network, Inc.

By letter dated July 9, 1991, on Lord, Bissell & Brook letterhead; Alex Seith wrote to Serafin stating that Serafin's 30% ownership in the company had been diluted to "slightly less than" 0.3% of the outstanding shares. On August 7 and August 13, 1991, the then-current board of directors and shareholders recommended and ratified, respectively, the actions taken by the corporation on April 22, 1991, and May 20, 1991, namely, the increase of authorized shares to 100,000 and the elimination of preemptive rights from the articles.

Serafin filed suit on August 14, 1991, against Alex R. Seith, William D. Seith, Great Lakes Network, Inc., f/k/a Seith-Serafin Communications, Inc., and Wisconsin News Network, Inc. Against Alex Seith, Serafin alleged, among other things, fraud and legal malpractice as Serafin's lawyer in conveying, then eliminating, shareholders' preemptive rights that resulted in dilution of Serafin's interest in the corporation from 30% to 0.3%

On April 16, 1993, Serafin filed his third amended verified complaint alleging for the first time three counts against Lord, Bissell & Brook, including a count for legal malpractice and fraud. On April 28, 1994, Lord, Bissell & Brook filed a section 2—615 motion to dismiss. On July 8, 1994, the Honorable Dorothy Kinnaird granted Lord, Bissell & Brook's motion to dismiss. After several further amendments to the complaint, Serafin was given leave to file a sixth amended complaint, again including legal malpractice and fraud counts against Lord, Bissell & Brook. On October 27, 1994, Lord, Bissell & Brook filed a motion to dismiss Serafin's sixth amended verified complaint based on sections 2—619(a)(5) and 2—619(a)(9) of the

Illinois Code of Civil Procedure. 735 ILCS 5/2—619(a)(5), (a)(9) (West 1992). On December 14, 1994, the trial court granted Lord, Bissell & Brook's motion to dismiss all counts against it.

On January 11, 1995, plaintiffs filed a motion to reconsider and to vacate the order of December 14, 1994, which was denied on February 23, 1995. Both the December 14, 1994, and February 23, 1995, orders allowed for an appeal under Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), since counts I through IX against Alex Seith, William Seith and the corporation are still pending in the circuit court of Cook County.

ANALYSIS

I

■ The purpose of a section 2—619 motion is to provide a means to dispose of issues of law and easily proved issues of fact. *Harris v. News-Sun*, 269 Ill. App. 3d 648, 650, 646 N.E.2d 8 (1995). Section 2—619(a)(5) allows a motion to dismiss because the action was not commenced within the time limited by law. 735 ILCS 5/2—619(a)(5) (West 1992).

■ Under section 2—619(a)(9), an action may be dismissed on the ground that a claim asserted is barred by other affirmative matter avoiding the legal effect or defeating the claim. 735 ILCS 5/2—619(a)(9) (West 1992). "Affirmative matter" includes a defense that completely negates the asserted cause of action. *West v. Gramley*, 262 Ill. App. 3d 552, 556, 634 N.E.2d 1261 (1994). A trial court's dismissal of a complaint is proper where the affirmative matter refutes crucial conclusions of law or conclusions of material fact that are unsupported by allegations of specific facts. *Harris*, 269 Ill. App. 3d at 651. The affirmative matter must, however, be something more than evidence offered to refute a well-pleaded fact in the complaint as such well-pleaded facts must be taken as true. *West*, 262 Ill. App. 3d at 556. A reviewing court must determine whether the allegations of the complaint, when interpreted in the light most favorable to the plaintiff, are sufficient to set forth a cause of action upon which relief may be granted. *Munizza v. City of Chicago*, 222 Ill. App. 3d 50, 52, 583 N.E.2d 561 (1991).

■ Serafin claims that his sixth amended complaint clearly pled 1991 acts and omissions upon which his cause of action for damages is premised. Lord, Bissell & Brook argues, however, that the statute of repose applicable to attorney malpractice actions barred Serafin's claims based on the 1986 acts or omissions. Sections 13—214.3(b), (c) and (f) of the Code of Civil Procedure provide:

"(b) An action for damages based on tort, contract, or otherwise *** against an attorney arising out of an act or omission in the performance of professional services *** must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought.

(c) *** [A]n action described in subsection (b) may not be commenced in any event more than 6 years after the date on which the act or omission occurred.

\* \* \*

(f) This Section applies to all causes of action accruing on or after its effective date." 735 ILCS 5/13—214.3(b, (c), (f) (West 1992). The effective date of the statute was January 1, 1991. 735 ILCS 5/13—214.3(b), (c), (f) (West 1992).

To determine whether Serafin's complaint is time-barred, we must first determine when Serafin's cause of action legally accrued. Section 13—214.3(c) makes bringing of the action under subsection (b) subject to a period of six years after the date on which the applicable act or omission occurred.

■ In the case *sub judice*, when the Seiths formed the corporation with Serafin on October 13, 1986, Alex Seith was issued 510 shares of stock, William Seith was issued 190 shares of stock, and Thomas Serafin was issued 300 shares of stock. Thus, Alex Seith and William Seith together were issued 700 shares of stock, or 70% of the stock. The articles of incorporation provided each of the shareholders with preemptive rights. However, the applicable Illinois Business Corporation Act of 1983 at the time of incorporation and at all times since provides:

"§ 10.20. Amendment by directors and shareholders. Any amendment authorized by Section 10.05 may be adopted by the action of the directors and shareholders in the following manner:

\* \* \*

(c) *** The proposed amendment shall be adopted upon receiving the affirmative vote of the holders of at least two-thirds of the outstanding shares entitled to vote on such amendment ***." 805 ILCS 5/10.20(c) (West 1992).

Thus, the shareholders with at least two-thirds of the outstanding shares can amend corporate articles without any approval of shareholders holding less than one-third of the outstanding shares. This right of Alex Seith and William Seith was not disclosed to Serafin. Serafin argues that the nondisclosure on October 13, 1986, of the rights of Alex Seith and William Seith was a violation of a fiduciary duty. Serafin argues that the provisions of sections 13—214.3(b) and (c) do not begin to run from 1986, but, rather, from 1991.

Serafin further contends that he sufficiently alleged 1991 wrongful acts and omissions upon which his cause of action on damages is premised. Specifically, he asserts that it was Lord, Bissell & Brook's 1991 act or the last act of drafting the documents eliminating preemptive rights and diluting Serafin's interest that caused the actual damage on which the lawsuit is based. He also contends that the statute of repose does not bar an action against Lord, Bissell & Brook until six years after the 1991 wrongful acts and omissions upon which his cause of action is premised. He further claims that Lord, Bissell & Brook engaged in a continuous course of negligent treatment between 1986 and 1991 by failing to inform him of the legal consequences of signing corporate documents eliminating his rights. We disagree.

Serafin relies on *Cunningham v. Huffman*, 154 Ill. 2d 398, 609 N.E.2d 321 (1993), to support his argument. In *Cunningham*, the patient received an interuterine device (IUD) from the defendant doctor in 1977. The patient began experiencing abdominal pain, and, in 1980, after probing failed to disclose the IUD, the doctor inserted another IUD and provided continuous treatment to the patient through 1988. After further problems and abdominal pain, the IUD was removed in 1988 by a different doctor. The defendant argued that, for purposes of the statute of repose, the proximate cause of injury was insertion of the first IUD in 1977. The plaintiff argued that the doctor's continuous course of treatment tolled the running of the statute of repose until the end of the doctor-patient relationship in 1988. The supreme court rejected the "continuous course of treatment" argument, but found that the term "act or omission or occurrence" did contemplate a continuing course of negligent treatment. *Cunningham*, 154 Ill. 2d at 405. The court stated that "act or omission" does not mean a specific "act or omission"; otherwise, the legislature would have provided "specific act" or "specific omission." *Cunningham*, 154 Ill. 2d at 405. The court held that the commencement of the statute of repose was the last "act or omission or occurrence" that caused the injury. *Cunningham*, 154 Ill. 2d at 406. See also *Johnson v. Core-Vent Corp.*, 264 Ill. App. 3d 833, 636 N.E.2d 833 (1993).

Serafin also relies on *Witt v. Jones & Jones Law Offices, P.C.*, 269 Ill. App. 3d 540, 646 N.E.2d 23 (1995). In *Witt*, the plaintiff filed a legal malpractice action seeking damages against a law firm for negligently drafting a will. The plaintiff argued that the statute of limitations was tolled by a "continuous representation rule." *Witt*, 269 Ill. App. 3d at 544. The plaintiffs analogized this rule to the "continuous course of treatment" doctrine discussed in *Cunningham*.

The plaintiffs argued that the continuous representation rule was applicable to legal malpractice claims against an attorney who continued to represent a client, and the statute of limitations on the malpractice claim should not have run until the attorney ceased to represent the client. The court rejected this argument because there is no "continuous representation rule" in Illinois. The court stated, *"[n]ot only have we failed to find a case adopting the continuous representation rule in Illinois, but our supreme court's rejection of the continuous course of treatment doctrine in Cunningham [citation] suggests the court is not ready to adopt a continuous representation rule with respect to legal malpractice cases."* (Emphasis added.) *Witt,* 269 Ill. App. 3d at 544.

■ Here, Serafin does not argue that the statute of repose was tolled under the "continuous representation rule." Rather, he argues that the statute of repose was tolled by a "continuous course of negligent treatment" by Lord, Bissell & Brook between 1986 and 1991. Therefore, he asserts that the statute of repose was tolled by the last act that caused the injury, which he claims occurred in April and May of 1991. However, we believe that the statute of repose in the instant case commenced to run from the October 13, 1986, date of incorporation.

We believe that the trial court was correct in dismissing Serafin's 1993 complaint against Lord, Bissell & Brook because Serafin's claim is predicated on the failure of Lord, Bissell & Brook in 1986 to inform him that his preemptive rights could later be eliminated by the majority shareholders and that he was damaged by the elimination and the subsequent dilution of his interest. In our opinion, the claim is clearly barred by the six-year repose period of section 13—214.3. Alternatively, if, as Serafin contends, his action is based on the conduct of Lord, Bissell & Brook in 1991, then Serafin has not stated and cannot state a cause of action because none of the 1991 acts or omissions complained of proximately caused his injury.

Under the Illinois Business Corporation Act, an affirmative vote of $66^2/3$ % of the shares is all that is needed to eliminate preemptive rights. 805 ILCS 5/10.20(c) (West 1992). At all times, Alex Seith and William Seith possessed at least 70% of the shares of the corporation and were empowered to eliminate preemptive rights at any time with or without Serafin's consent. Thus, any acts or omissions of Lord, Bissell & Brook could not have been the proximate cause of Serafin's damages as Serafin's agreement was not necessary to accomplish that purpose.

We so hold because the elements of a legal malpractice claim are: (1) the existence of an attorney-client relationship that establishes a

duty on the part of the attorney; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause establishing that "but for" the attorney's negligence, the plaintiff would have prevailed in the underlying action; and (4) damages. *Ignarski v. Norbut*, 271 Ill. App. 3d 522, 525, 648 N.E.2d 285 (1995). In order to satisfy the proximate cause element of his claim, the plaintiff must plead facts sufficient to show that but for the attorney's malpractice, the client would have been successful in the undertaking the attorney was retained to perform. *Glass v. Pitler*, 276 Ill. App. 3d 344, 349-50, 657 N.E.2d 1075 (1995); *Ignarski*, 271 Ill. App. 3d at 525. Damages will not be presumed, and the client bears the burden of proving he suffered a loss as a result of the attorney's alleged negligence. *Ignarski*, 271 Ill. App. 3d at 526.

Although attorneys are obligated to inform their clients of the risks associated with a proposed legal course of action (*Majumdar v. Lurie*, 274 Ill. App. 3d 267, 271, 653 N.E.2d 915 (1995)), any warnings that Lord, Bissell & Brook could have given to Serafin regarding the consequences of signing the documents in 1991 would not have prevented the dilution of his stock. Therefore, we hold that the 1991 acts did not proximately cause Serafin's loss.

II

■ Serafin also contends that section 13—214.3 is unconstitutional because it is contrary to the fourteenth amendment of the Constitution of the United States and the equal protection clause of the Illinois Constitution. This argument has been waived because Serafin has failed to comply with the provisions of Supreme Court Rule 19 (134 Ill. 2d R. 19), requiring that notice be given the Attorney General by any party questioning the constitutionality of a state statute in a proceeding where the Attorney General is not already a party. See *Witt*, 269 Ill. App. 3d at 545.

Moreover, even if this issue were not waived, we believe that Serafin's constitutional arguments are without merit. A statute is presumed to be valid, and the burden is on the party challenging it to establish its constitutional invalidity. *Adcock v. Montgomery Elevator Co.*, 274 Ill. App. 3d 519, 525, 654 N.E.2d 631 (1995). As a general rule, courts will not interfere with the legislature's judgment unless the classification is clearly unreasonable and palpably arbitrary, and will resolve all reasonable doubts in favor of upholding the validity of the statute. *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.*, 114 Ill. 2d 252, 500 N.E.2d 34 (1986); *Billman v. Crown-Trygg Corp.*, 205 Ill. App. 3d 916, 926-27, 563 N.E.2d 903 (1990).

Specifically, Serafin argues that the two-year statute of limita-

tions with a six-year statute of repose confers a benefit upon attorneys that is not available to any other citizen of Illinois. This statement is clearly incorrect as evidenced by statutes of repose for other professions. For example, actions against physicians and hospitals must be brought within four years after the date on which the alleged wrongful conduct occurred. 735 ILCS 5/13—212(a) (West 1992). Also, actions against persons in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property may not be brought "after 10 years have elapsed from the time of such act or omission." 735 ILCS 5/13—214.3(b) (West 1992). Therefore, the statute of repose does not violate the equal protection clause of the constitution.

■ Serafin also claims that the statute is unconstitutional because it is retroactive in its effect and would bar a cause of action before it has ripened. We disagree. The period of repose gives effect to a policy different from that advanced by a period of limitations; the purpose of a statute of repose is to impose a cap on the applicability of the discovery rule so that the outer limit terminates the possibility of liability after a definite period of time, regardless of a potential plaintiff's lack of knowledge of his cause of action. *Boggs v. Adams*, 838 F. Supp. 1293, 1298 (N.D. Ill. 1993); *Mega v. Holy Cross Hospital*, 111 Ill. 2d 416, 422, 490 N.E.2d 665 (1986). Because the statute of repose shortens the limitations period, a person whose cause of action arose before the effective date of the statute will be given a reasonable period of time in which to bring his action. *Mega*, 111 Ill. 2d at 422. The fact that a repose provision may, in a particular instance, bar an action before it is discovered is an accidental rather than necessary consequence. *Mega*, 111 Ill. 2d at 424.

We believe the two-year discovery period as well as the six-year statute of repose appear reasonably related to the statute's purpose. The fact that Serafin failed to file a timely suit is not justification for finding section 13—214.3 unconstitutional. See *Witt*, 269 Ill. App. 3d at 545; *Blackwood v. Rusk*, 148 Ill. App. 3d 868, 871, 500 N.E.2d 69 (1986).

## III

■ Serafin next contends that the trial court erred in not applying equitable estoppel. Equitable estoppel is a theory that precludes a litigant from denying prior assertions in cases where it would be unjust to permit the litigant to disavow express and implied statements upon which another party has relied and that have caused him to forego filing his suit. *Cramsey v. Knoblock*, 191 Ill. App. 3d 756, 765, 547 N.E.2d 1358 (1989). A party will not be equitably

estopped from asserting a statute of limitations defense where plaintiff fails to show that: (1) defendant has made some misrepresentation or concealment of a material fact; (2) defendant had knowledge, either actual or implied, that the representations were untrue at the time they were made; (3) plaintiff was unaware of the untruth of the representations both at the time made and the time they were acted upon; (4) defendant either intended or expected his representation or conduct to be acted upon; (5) plaintiff did in fact rely upon or act upon the representations or conduct; and (6) plaintiff has acted on the basis of the representations or conduct such that he would be prejudiced if defendant is not estopped. *Nickels v. Reid*, 277 Ill. App. 3d 849, 855-56, 661 N.E.2d 442 (1996). Moreover, the doctrine of equitable estoppel will not apply to a case if defendant's conduct terminated within ample time to allow the plaintiff to still avail himself of any legal rights he may have had. *Cramsey*, 191 Ill. App. 3d at 765.

■ Serafin argues that Lord, Bissell & Brook should be estopped from asserting the statute of repose as a defense because he relied on its assurances that his interests were protected. Serafin relies on *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 633 N.E.2d 627 (1994), to support his argument. In *Jackson Jordan*, the client, a manufacturer, asked its attorneys for an opinion as to whether a new model would infringe on any existing patents. In 1973, the attorneys advised the client that the new model did not infringe upon any existing patents. The client proceeded to manufacture and market the product, but was notified in 1982 that another company held a patent on a similar machine. The client settled the patent infringement dispute but did not file a malpractice action until 1988. The court held that equitable estoppel applied because had it not been for the attorneys' reassurance that no patent was infringed, the plaintiff would have filed suit sooner. *Jackson Jordan*, 158 Ill. 2d at 252.

We believe that *Jackson Jordan* is inapposite to the instant case. Although Serafin states that Lord, Bissell & Brook passively concealed its negligence until April 22, 1991, he did not file a complaint against it until April 1993. Therefore, we hold that Serafin had ample time to avail himself of any legal rights he may have had.

IV

■ Lastly, Serafin contends that the trial court erred in not finding that Alex Seith as a partner of Lord, Bissell & Brook fraudulently concealed the cause of action from him. Section 13—215 of the Code states:

"If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." 735 ILCS 5/13—215 (West 1992).

Such concealment requires affirmative acts or representations designed to prevent discovery of the cause of action. *Hauk v. Reyes*, 246 Ill. App. 3d 187, 194, 616 N.E.2d 358 (1993); *Waters v. Reingold*, 278 Ill. App. 3d 647, 660, 663 N.E.2d 126 (1996). Silence alone does not ordinarily constitute fraudulent concealment, unless the person occupies a fiduciary relationship to plaintiff. *Hagney v. Lopeman*, 147 Ill. 2d 458, 463, 590 N.E.2d 466 (1992). Also, fraudulent concealment by someone other than defendant does not ordinarily toll the statute of limitations, unless the person fraudulently concealing the cause of action is in privity with or occupies an agency relationship with defendant, in which case defendant's knowledge or approval of the concealment will toll the statute of limitations. *Cramsey*, 191 Ill. App. 3d at 767.

However, if at the time the plaintiff discovers the fraudulent concealment a reasonable time remains within the applicable statute of limitations, section 13—215 does not toll the running of the limitations period. *Muskat v. Sternberg*, 211 Ill. App. 3d 1052, 1061, 570 N.E.2d 696 (1991); *Cramsey*, 191 Ill. App. 3d at 767. This rule is logical because once a party discovers the fraud, it is no longer concealed, and if time remains within which to file the action, section 13—215 cannot operate to toll the limitations period. *Muskat*, 211 Ill. App. 3d at 1061. Therefore, even assuming that Seith and Lord, Bissell & Brook acted so as to fraudulently conceal the cause of action, Serafin had ample time to file his complaint within the limitations period. Accordingly, section 13—215 did not toll the running of the statute of limitations.

For the reasons cited herein, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNULTY, P.J., and GORDON, J., concur.